

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Tricia B. O'Reilly
Direct Dial: (973) 757-1104
toreilly@walsh.law

April 28, 2020

**VIA ECF**
Hon. Cathy L. Waldor, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> *Re:*   *The Hertz Corporation, et al. v. Mark Frissora, et al.*
>        **Civ. A. No. 2:19-cv-08927 (ES)(CLW)**

Dear Judge Waldor:

This firm, along with Mayer Brown LLP, represents Defendant J. Jeffrey Zimmerman ("Zimmerman") in this case, in which Plaintiffs Hertz Global Holdings, Inc. and The Hertz Corporation (collectively, "Hertz" or "the Company") seek to claw back incentive compensation paid to Mr. Zimmerman and his co-defendant Mark Frissora ("Frissora") while they were executive officers of the Company. The parties agree that the issue should be fully briefed, and this joint letter is submitted pursuant to this Court's Civil Case Management Order and Local Civil Rule 37.1 concerning Defendants' desire to obtain leave to file a motion to compel discovery.

**The Discovery at Issue**

Defendants Zimmerman and Frissora jointly seek to compel documents and testimony related to: (1) presentations, and underlying investigation materials, made by inside and outside counsel to the Board of Directors and its Committees, and (2) investigation materials underlying the Company's voluntary disclosures to the SEC. Hertz has withheld documents and instructed witnesses not to answer questions related to these materials on the basis of attorney-client privilege and attorney work-product protections. Defendants contend that Hertz has waived privilege over these materials, and therefore seek an Order compelling the production of responsive documents and testimony.

**Meet and Confer Efforts**

In an effort to resolve this dispute, the parties participated in two meet and confers on January 13, 2020 and March 12, 2020. During those meetings, Hertz took the position that it could not disclose the facts of gross negligence or misconduct that allegedly form the basis of its claims against Defendants without disclosing material protected by the attorney-client privilege. Hertz asserted that it would not produce any of the presentations by counsel to the Compensation Committee and the Board of Directors, or the underlying investigative materials, because they are

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 2

protected by attorney-client privilege. Hertz has since reasserted that position by email and during the March 26, 2020 teleconference with Your Honor.

**Defendants' Position**

**A. Background**

Hertz's case is based entirely on a resolution (the "Clawback Resolution") passed by the Compensation Committee and Board of Directors in 2019 finding that Defendants engaged in gross negligence or willful misconduct that caused or contributed to the Company's Restatement of its financial statements in 2011, 2012, and 2013 (the "Restatement"). The Compensation Committee and Board made its finding in reliance on "multiple presentations from the Corporations' internal counsel and from Quinn Emanuel Urquhart & Sullivan, LLP, Herbert Beigel and other outside counsel with respect to the merits of claims under the Clawback Policies against the Former Officers." Ex. A (Clawback Resolution).

Hertz has repeatedly taken the position that in order to prove its case, it is only required to prove that the Compensation Committee and Board acted in good faith. *See, e.g.,* DE 54 at 13 (Amend. Compl.); DE 73 at 8 (Opp. to Mot. to Dismiss). Defendants strongly contest this standard of proof and will show that Hertz is required by the terms of Defendants' Separation Agreements to prove *actual* gross negligence or misconduct by Defendants. But even under Hertz's own theory of the case, Defendants cannot succeed without showing the Board's lack of good faith, which Defendants can *only* do by rebutting the evidence of misconduct presented to the Board.

Discovery thus far has confirmed that the decision to bring the clawback claim – the decision Hertz contends was in good faith – was made by the Board solely in reliance on evidence presented by counsel. Henry Keizer, the Chairman of Hertz's Board of Directors, was not a member of the Board during the Restatement period and testified at his deposition that he relied *solely* on counsel's clawback presentations to understand the causes of the Restatement and to vote in favor of the Clawback Resolution. Ex. B (Keizer Dep. Tr. at 50:2-11; 55:16-25; 70:23-71:6). But Hertz prohibited Mr. Keizer from testifying to the substance of counsel's advice. Richard Frecker, the Company's General Counsel at the time, testified that the advice of the various firms to the Compensation Committee and Board was conflicting. Ex. C (Frecker Dep. Tr. at 318:5 – 320:5). Once again, however, Hertz invoked the attorney-client privilege to prohibit Mr. Frecker from testifying about the substance of that advice or the conflict. *Id.* at 320:6-15.

**B. Hertz Waived Privilege When It Put the Compensation Committee Materials At Issue.**

In New Jersey, the attorney-client privilege is waived "where the plaintiff has placed in issue a communication which goes to the heart of the claim in controversy." *Kinsella v. Kinsella*, 150 N.J. 276, 300 (1997); *In re PSE&G S'holder Litig.*, 320 N.J. Super. 112, 114 (Ch. Div. 1998) (finding that "when the report or opinion of counsel is relied upon as a basis for the directors' decision, the attorney-client privilege as to that report and the underlying background to the preparation of the report has been waived"); *see also In re ML-Lee Acquisition Fund II, L.P.*, 859

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 3

F. Supp. 765, 767 (D. Del. 1994) (finding waiver where "Defendants intend only to rely on the act of seeking advice from counsel to show they behaved in good faith, Plaintiffs are entitled to test the validity and sincerity of that action. In order for Plaintiffs to have a fair and adequate opportunity to test and rebut Defendants' allegations that they sought advice from counsel, Plaintiffs are entitled to know, for example, whether the [ ] Defendants disclosed all material facts to counsel, whether counsel gave an otherwise well-informed opinion, did the [ ] Defendants follow the advice from counsel."); *Fahs Rolston Paving Corp. v. Pennington Properties Dev. Corp.*, No. CIV A 03-4593 MLC, 2006 WL 3827427 (D.N.J. Dec. 28, 2006).

The presentations made to the Board and Committees regarding clawback claims, and all investigation materials underlying those presentations, go to the heart of this case, and have been put at issue by Hertz's Amended Complaint, its opposition to Defendants' motions to dismiss, and the testimony of Hertz witnesses.

As discussed above, Hertz has repeatedly claimed, first in its Amended Complaint and again in opposition to the motions to dismiss, that its burden is to prove that the Board and Committees acted in good faith. This argument puts front and center the evidence that was presented to the Board and its Committees. In order to rebut that evidence, Defendants must know what the evidence was. Hertz has further put these documents and testimony at issue by allowing witnesses to testify to some facts related to the clawback presentations, like Mr. Keizer's sole reliance on those materials to vote in favor of the Clawback Resolution, and Mr. Frecker's testimony that the firms gave conflicting advice, while prohibiting testimony as to the substance of counsel's advice. Ex. B (Keizer Dep. Tr. at 50:2-11; 55:16-25; 70:23-71:6); Ex. C (Frecker Dep. Tr. at 318:5 – 320:15). Different advice from different firms may well show that the Board did not, in fact, act in good faith. If, for example, the Board acted against all of the advice it was given as to a particular individual, or a particular aspect of the claim, it will be difficult to prove it nevertheless acted in good faith. Hertz cannot rely exclusively on, and still withhold as privileged, the only evidence available to Defendants to prove the Board's lack of good faith.

The Compensation Committee's good faith is all the more dubious because its contention that Defendants engaged in gross negligence or willful misconduct is directly contradicted by the Company's own internal investigation into the causes of the Restatement. Counsel's investigations into the clawback claims were based on the Company's internal investigation into the causes of the Restatement. *See* Ex. D at 2 ("McDermott examined and considered pertinent portions of the investigation materials originally gathered during the course of the internal investigation"); Ex. B at 512:25-513:10 (Keizer Dep. Tr.). And the results of that investigation, which were disclosed to the SEC (another act of waiver, as discussed below), reach very different conclusions than the claims the Company has asserted in this case. For example, Hertz told the SEC that "[w]e did not find evidence that Frissora ever instructed a member of the Hertz organization to make an inappropriate accounting entry or accounting judgment, or was aware such an entry had been made, or that he was aware of the misstatements prior to the spring and summer of 2014." Ex. E at 179 (August 5, 2015 Presentation to the SEC). To the contrary, the internal investigation concluded that the accounting issues involved in the Restatement were "inherently subjective accounting concepts that could yield a wide range of reasonable results" and "were openly discussed and debated" at the time. *Id*. at 29, 178. While Hertz now claims that Frissora's tone at the top caused

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 4

accounting errors, Hertz told the SEC that the decisionmakers involved in the accounting decisions surrounding the Restatement "defended the propriety of their judgments, and the business factors and environment they were assessing in making those judgments." *Id.* at 178. Similarly, in defending a securities fraud claim brought as a result of the Restatement, Hertz argued that "the Restatement here *does not admit that any misconduct occurred.*" Ex. F at 26 (Hertz 3d Cir. Br.) (emphasis added). Yet the Company now insists Defendants engaged in misconduct. Without question, the positions Hertz took with the SEC and in prior litigation were informed by the investigations conducted by outside counsel—the same investigations that purportedly supported the clawback demands at issue here. Accordingly, Defendants must have access to the information presented to the Compensation Committee and Board of Directors, along with the underlying investigative materials, in order to rebut Hertz's claims that the Clawback Resolution was made in good faith.

Moreover, Hertz should not be permitted use the attorney-client privilege as both a sword and a shield. New Jersey law prohibits this manipulation of the privilege. *Tetris Holding, LLC v. Xio Interactive*, No. 09-6115, 2011 WL 13141049, at *15 (D.N.J. June 20, 2011) (reasoning that "a party's use of the attorney-client privilege as a sword to buttress a good faith argument waives that party's ability to use the attorney-client privilege as a shield to protect that party from discovery requests and deposition questions"). Hertz cannot disclose material that benefits it, like the Clawback Resolution, and simultaneously withhold material, like the evidence presented to the Resolution's decision-makers, that would reveal the full set of relevant facts.

In addition to what it has already disclosed in this case, Hertz has also disclosed details of counsel's investigations and presentations regarding its clawback decision in other litigation. In 2017, a Hertz shareholder demanded that the Company bring a clawback claim against former executives. The Company's outside counsel responded to that demand, explaining that the firm conducted an investigation into a possible clawback claim (based in part on the Company's previous internal investigation into the causes of the Restatement, which were disclosed to the SEC) and concluded that a clawback claim would be contrary to the Company's best interest. Ex. D (McDermott Letter). The Company also claimed that it concluded that no current or former member of Hertz's Board of Directors breached their fiduciary duty to the Company (although Mr. Keizer conceded there is no evidence that Zimmerman or Frissora were aware of information unknown to the Board). *Id.* That response was later filed in the ensuing shareholder litigation. *Id.* Likewise, the Audit Committee minutes already produced by Hertz show that the Board considered clawing back executive compensation in connection with the Restatement as early as July 2015. Ex. G (July 13, 2015 Minutes of the Joint Meeting of the Audit Committees).

Hertz cannot make this type of partial waiver disclosing some details of the investigation in defense of a prior litigation but withhold the underlying facts in the prosecution of this litigation. *Hawa v. Coatsville Area Sch. Dist.*, No. 15-4828, 2016 WL 4737389, at *2 (E.D. Pa. Sept. 12, 2016) (citing *Net2Phone, Inc. v. Ebay, Inc.*, No. 06–2469, 2008 WL 8183817, at *10 (D.N.J. June 26, 2008)) ("The central element in determining whether a partial waiver exists is the question of fairness . . . . Fairness prohibits a partial waiver . . . where the party makes factual assertions, the truth of which can only be assessed by examination of the privileged communications."). This is particularly true where Hertz is taking positions in this litigation that are fundamentally

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 5

inconsistent with positions previously taken with the SEC and in shareholder litigation.  Because Hertz disclosed some details of its investigation, it would be unfair to allow Hertz to withhold the details Defendants need to challenge the truth of the Company's assertions.

      **C.  Hertz Waived Privilege Over Investigation Materials Underlying Its Voluntary Disclosures to the SEC.**

      In addition to the clawback presentations and investigation materials, Hertz has also waived privilege over investigation materials underlying its voluntary disclosures to the SEC.

      Generally, voluntary disclosure to a third party of otherwise privileged material generally destroys the privilege. In this District and throughout the Third Circuit, the general rule applies even when a party discloses privileged information to a government agency. A party "waive[s] the attorney-client privilege and the work-product doctrine when it disclose[s] otherwise protected documents to the SEC and to the DOJ." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-2367, 2012 WL 4764589, at *3 (D.N.J. Oct. 5, 2012) ("[A]n agreement between [a party] and the DOJ preserved [that party's] right to invoke the attorney-client privilege only as to the DOJ-and does not appear in any way to have purported to preserve [that party's] right to invoke the privilege against a different entity in an unrelated civil proceeding) (internal citations omitted) (emphasis in original); *see also SEC v. Herrera*, No. 17-20301, 2017 WL 6041750, at *5 (S.D. Fl. Dec. 5, 2017) (finding waiver over counsel's interview notes and memoranda after counsel made an oral presentation of the details of those interviews to the SEC).

      As discussed above, Hertz made extensive disclosures to the SEC during its internal investigation, including a 180-page slide presentation breaking down in detail how each of the accounting misstatements identified in the Restatement occurred, along with the names of the account owners for each misstatement and details from some account owner interviews. Ex. E. Hertz even disclosed "[r]epresentative witness observations about management tone" from 13 interviewees identified by name. Ex. E at 73-74, 128, 178. As Mr. Frecker testified, all these disclosures to the SEC were made voluntarily. Ex. C at 263:12-264:4 (Frecker Dep. Tr.). Hertz must produce all investigation materials in this case and allow witnesses to testify about these overlapping investigations.

      For these reasons, Defendants respectfully request leave to file a motion to compel Hertz to produce all materials, and allow all witnesses to testify to the content of those materials, (1) presentations, and underlying investigation materials, made by inside and outside counsel to the Compensation Committee and Board of Directors, and (2) investigation materials underlying the Company's voluntary disclosures to the SEC.

<u>**Plaintiffs' Response**</u>

      Defendants' desired motion to compel is fundamentally premised on errant assumptions: that Hertz relied on advice of counsel, and that it is therefore now seeking to use the attorney-client privilege as both a sword and a shield.  However, the Amended Complaint does not allege reliance

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 6

on advice of counsel, and Hertz is not the party that has tried to inject or invoke privileged conversations to address any issue in this litigation.  Neither proof of its good faith nor of Defendants' gross negligence, if required, depends on opinions of counsel – and Judge Salas effectively rejected, in her March 12, 2020 ruling denying Defendants' motion to dismiss the clawback claims, the notion that proof of gross negligence is required.  This action is based on good faith determinations (and efforts to obtain facts/evidence), not on legal opinions of attorneys who happened to communicate facts in connection with its investigation and legal advice to Hertz. Thus, Defendants wrongly conflate relying on the legal advice of counsel (which is not alleged in the Amended Complaint) with reliance on information/facts received from counsel (that reflects protected work product and may also be mixed with legal opinions).

Thus, Defendants' contentions about Hertz trying to use the attorney-client privilege as a "sword and shield" is divorced from reality.  Hertz is not the party that has injected or invoked privileged conversations.  Its Amended Complaint says nothing about its lawyers' advice.  Nor does the resolution that the Compensation Committees adopted.  The fact that Hertz's corporate resolution reveals/confirms what was predictable – that a publicly traded company hired sophisticated counsel to assist it with an interrelated SEC investigation and a comprehensive investigation of the facts and causes of the need for the Restatement (with the assistance of its accountants, PricewaterhouseCoopers, and various non-attorney consultants and analysts) – does not mean that Hertz is using its lawyers advice as a sword.[1]  Hertz simply has no need to rely on its attorney's advice to establish it acted in good faith when bringing its clawback claims against Defendants.  In short, it is Defendants, not Hertz, who is seeking to use privilege communications as a sword.

Hertz cannot be deemed to have injected attorney-client communications into this action by acknowledging that it was assisted by counsel in its investigations of the matters underlying this lawsuit, or by the mere bringing of this lawsuit.  Under Delaware law, the standard is the same. *See, e.g. In Re Comverge, Inc. S'holders Litig*. (Del. Ch. April 10, 2013) 2013 Del. Ch. LEXIS 92 *; 2013 WL 1455827 (noting that  "[t]he first prong of the at issue exemption is whether the party injected privileged lawyer—client communications into the litigation" and it "usually applies when a party asserts lawyer—client privilege to protect a communication and then later seeks to admit that same communication as evidence," and finding that the defendants had not "injected or sought to inject any specific attorney—client communications into the litigation" as "[q]uestions regarding the existence or nonexistence of such communications were raised by" the plaintiffs, so the first prong of the "at issue" exemption did not apply).

As indicated above, Defendants' desired motion is fundamentally premised on an errant assumption: that Hertz  relied on advice of counsel.[2]  However, the Compensation Committees' resolution merely acknowledges that they (predictably) "received multiple presentations from the

---

[1] Those accountant reports in Hertz's possession have been produced.  Notably, Defendants has not bothered to subpoena PricewaterhouseCoopers or other consultants.

[2] We do not address here every wrong statement in Defendants' lengthy position statement, which reads more like a mini-brief and inappropriately contains references to exhibits that we have not even been supplied with.

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 7

Corporations' internal counsel and from [various outside counsel]." And, to the extent that Defendants attempt to support their claim that "the decision to bring the clawback claim – the decision Hertz contends was in good faith – was made by the Board solely in reliance on evidence presented by counsel" by pointing to certain deposition testimony of Hertz's former General Counsel, Richard Frecker, Esq., and the chair of Hertz's Board of Directors, Henry Keizer, nothing in their cited testimony supports Defendants' attempt to compel production of privileged materials or communications.

Mr. Frecker simply acknowledged there was a difference in the legal opinions between certain of the numerous law firms, but Defendants' failed to ask him to identify the legal issue, or even whether it involved a legal issue. In any event, because the Compensation Committees are not alleged in the Amended Complaint to have acted in reliance on any lawyer's legal opinion (when deciding, in good faith, to clawback compensation and bring this lawsuit), any difference in legal opinions is irrelevant. And whether the lawyers disagreed with each other with whether the facts established gross negligence, such opinions, positive or negative, are irrelevant. The ultimate fact finders, the Court or jury, applies the law to the facts; the Court is the interpreter of the law's requirements, not the parties' attorneys.

Defendants fare no better by citing snippets of Mr. Keizer's testimony. The fact that Mr. Keizer testified in response to questioning that he exclusively relied on briefings by outside counsel is no more an injection of the privilege than any reliance on facts presented in those briefings. Moreover, any lack of knowledge of wrongdoing by Defendants is irrelevant. Mr. Keizer did not join the Hertz Board until after Defendants resigned, and it is clear he has no personal, relevant or probative knowledge of their conduct that contributed to the need for the restatement. Furthermore, he did not serve on the Compensation Committees that resolved to clawback Defendants' compensation, and in any event, neither he nor anyone else testified that those committees relied on the legal opinion of counsel at all, let alone exclusively.

Moreover, Hertz's supplemental responses to Defendants' interrogatories reflect the Compensation Committees' reliance on the following facts, independent of any legal opinions: (a) information appearing in Hertz's SEC Form 10-K filing, (b) the expertise of the Compensation Committees' members, (c) facts stated in the complaint, (d) non privileged reports, (e) Hertz's Standards of Business Conduct, and (f) and the SEC investigation.

Lastly, Defendant's desired motion is meritless and a waste of resources (including Defendants' legal fees that Hertz is required to advance) because they do not need to know the substance of Hertz's legal advice in order to try to prove that Hertz's Compensation Committees did not act in good faith. In short, their advice is irrelevant. As a simple matter of logic, the argument makes no sense because, in the final analysis, it would be for the Court or a jury to determine whether the Compensation Committee actually determined in good faith that their gross negligence (or other misconduct) warranted clawing back certain of his incentive compensation. Notably, good faith "encompasses, among other things, an honest belief, the absences of malice, and the absence of design to defraud or to seek an unconscionable advantage." Black's Law Dictionary (6th ed. 1990). And, the '[t]erm 'bad faith' is not simply bad judgment or negligence

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 8

but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." Black's Law Dictionary 139 (6th ed. 1990)). Defendants can learn about the Compensation Committees members' (good faith) intentions/actions by deposing them and inquiring if they knew Defendants or otherwise have any personal animosity or ill will against him, or any other bad faith reasons to seek to clawback his compensation, and why they chose not to sue certain other members of senior management, and relatedly, their views of the nature and impact of Defendants' alleged misconduct.

In sum, good faith can be proven in various ways, such as the fact that the Compensation Committees considered the facts and engaged in honest deliberations – and nothing required Hertz to have hired (or agreed with) any lawyers at all. Thus, the mere fact alone that Hertz decided to hire sophisticated outside counsel, and spend a small fortune on their investigations, is merely additional proof of good faith. The substance of their legal advice, and work product, is not relevant; indeed, even if Hertz's Compensation Committee members disagreed with their own lawyers' findings/conclusions, they could still be acting in good faith, as clients are free to disagree with their lawyers. Accordingly, the relevant issue is whether the facts establish good faith – that is, whether the facts show that Compensation Committee members took their jobs seriously and acted without malice or dishonest purpose. The relevant issue is not a lawyer's advice as to a legal question/objective standard as to whether the facts actually support a finding of gross negligence.

Indeed, the meritless nature of Defendants' desired motion is, underscored by the fact that they seek to bring it without having taken a single deposition of the persons at Hertz actually responsible for the decision to clawback Defendants' bonus compensation – members of the Compensation Committee.

Lastly, as concerns Defendants' arguments concerning Hertz's other, prior litigations and Hertz's dealings with the SEC, suffice to say that Hertz produced no privileged documents to any third-parties in connection with those matters and there is no otherwise no valid basis for Defendants to argue that they are now entitled to such materials.

The parties thank the Court for its consideration of this submission and are available should Your Honor have any questions or require anything further.

Respectfully submitted,

*s/Tricia B. O'Reilly*

Tricia B. O'Reilly
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100


*Of counsel*:

Hon. Cathy L. Waldor, U.S.M.J.
April 28, 2020
Page 9

Vincent J. Connelly (admitted *pro hac vice*)
J. Gregory Deis (admitted *pro hac vice*)
Sara Norval (admitted *pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 782-0600

*Attorneys for Defendant*
    *J. Jeffrey Zimmerman*

*s/Gavin J. Rooney*

Gavin J. Rooney
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

*Of counsel:*
David A. Kotler (admitted *pro hac vice*)
Jeffrey A. Brown (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500

*Attorneys for Defendant Mark Frissora*

*s/Douglas E. Motzenbecker*

Douglas E. Motzenbecker
Gordon & Rees LLP
18 Columbia Turnpike – Suite 220
Florham Park, NJ 07032
Tel.: (973) 549-2514

*Attorney for Plaintiffs*

Cc:    all counsel of record (via ECF & email)