Not for Publication

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE HERTZ CORPORATION,** *et al.*, | |
| **Plaintiffs,** | **Civil Action No. 19-8927 (ES) (CLW)** |
| **v.** | **OPINION** |
| **MARK P. FRISSORA,** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court are the motions of defendants Mark P. Frissora and John J. Zimmerman (collectively, "Defendants") to dismiss plaintiffs' second amended complaint. (D.E. Nos. 120 & 122). Plaintiffs Hertz Global Holdings, Inc. and The Hertz Corporation (collectively, "Plaintiffs" or "Hertz") oppose the motions. (D.E. No. 141). The Court held oral argument on the motions on April 13, 2021. (D.E. No. 201). Having considered the parties' submissions and oral arguments, and for the following reasons, the Court DENIES the motions; Plaintiffs' claims may proceed, as limited by this Opinion.

## I.    BACKGROUND

### A.    Factual Background

In 2014, Hertz, with the advice of its outside auditors, determined that a restatement of Hertz's financials from fiscal years 2011, 2012, and 2013 was necessary. (D.E. No. 109, Second Amended Complaint ("SAC") ¶ 90). The restatement, and the accounting errors identified therein,

led to federal and state government investigations, a securities class action lawsuit against Hertz, and other incidental costs. (*Id.* ¶¶ 100–23).

Central to the instant lawsuit is Plaintiffs' belief that the gross negligence and misconduct of Hertz's senior executive officers, including defendants Frissora (formerly Chief Executive Officer) and Zimmerman (formerly Vice President, Secretary and General Counsel), contributed to the need for the restatement. (*Id.* ¶ 1). Defendants' alleged misconduct and their involvement in and knowledge of alleged accounting improprieties and irregularities form the basis of Plaintiffs' claims, which are alleged as three breach of contract theories.

First, Plaintiffs allege that they are entitled to recover certain incentive-based compensation and "golden parachute" payments that they paid to Defendants. Specifically, in Count I, Plaintiffs allege a breach of contract claim for enforcement of a 2010 clawback policy to recover incentive-based compensation paid to Defendants in fiscal years 2011, 2012, and 2013. (*Id.* ¶¶ 124–36). The 2010 clawback policy allows Plaintiffs to claw back certain incentive compensation paid to Defendants if (i) the payment, grant or vesting of such incentive compensation was based on the achievement of financial results that were the subject of a restatement of the company's financial statements, as filed with the Securities and Exchange Commission ("SEC"); (ii) the need for the restatement was identified within three years after the date of the filing of the financial results that were subsequently restated; (iii) Hertz's compensation committee determines in its sole discretion, exercised in good faith, that the executive officer's gross negligence, fraud or misconduct caused or contributed to the need for the restatement; and (iv) the compensation committee determines in its sole discretion that it is in the best interests of the company and its stockholders for the executive officer to repay or forfeit all or any portion of the incentive compensation. (*Id.* ¶ 126). In Count II, Plaintiffs allege a breach of contract claim for enforcement of a 2014 clawback policy to recover

incentive-based compensation in Defendants' golden parachutes. (*Id.* ¶¶ 137–44). The 2014 clawback policy is substantially similar to the 2010 policy but requires that the compensation committee determine in its sole discretion, exercised in good faith, that the executive officer's gross negligence or **willful** misconduct caused or contributed to the need for the restatement. (*Id.* ¶ 141).

Second, in Count III, Plaintiffs allege that Defendants breached certain "standards of business conduct" that were in effect between 2009 and 2014. (*Id.* ¶¶ 145–59). As a proximate result of these breaches, Plaintiffs allege that they have suffered damages consisting of, *inter alia*, increased financial and other costs and burdens resulting from the required restatement and the various lawsuits and investigations that predictably followed. (*Id.* ¶ 158).

Third and finally, Plaintiffs allege that Defendants breached certain representations made at the time of their resignations from Hertz in 2014 in their respective separation agreements. (*Id.* ¶¶ 160–70). Specifically, Plaintiffs allege that Defendants falsely represented that they had not knowingly violated the company's standards of business conduct, and that they did not facilitate or have knowledge of any financial or accounting improprieties or irregularities within Hertz. (*Id.* ¶¶ 165–66). Plaintiffs seek to recover the monies paid to Defendants in connection with these separation agreements. (*Id.* ¶ 170).

### B. Procedural Background

Plaintiffs filed the original complaint on March 25, 2019. (D.E. No. 1). After Defendants moved to dismiss, Plaintiffs filed the first amended complaint. (*See* D.E. Nos. 48–50; D.E. No. 54, First Amended Complaint ("FAC")). Defendants then moved to dismiss the FAC. (D.E. Nos. 57–59). Following briefing and oral argument, the Court granted-in-part and denied-in-part the motions. (D.E. No. 96; D.E. No. 100, Transcript of March 10, 2020 Oral Argument ("March 2020

OA Tr."); D.E. No. 98, Transcript of March 11, 2020 Decision ("Prior Decision")). Specifically, the Court declined to dismiss Plaintiffs' claims for breaches of the 2010 and 2014 clawback policies because Defendants' arguments for dismissal were premature at the motion to dismiss stage. (Prior Decision at 2:11–6:13). The Court dismissed Plaintiffs' claim for breach of the standards of business conduct, finding that Plaintiffs failed to identify the relevant provision or provisions of the standards that Defendants allegedly breached, and how the conduct of each defendant violated any particular provision. (*Id.* at 6:14–7:14). The Court declined to conclude, as Defendants requested, that the standards of business conduct could not constitute a contract as a matter of law, finding that question premature. (*Id.* at 7:15–10:3). Finally, the Court dismissed Plaintiffs' claim for breach of the separation agreements because Plaintiffs relied on improper group pleading and otherwise failed to sufficiently state their claim. (*Id.* at 10:8–13:14). The dismissals were without prejudice, and the Court provided Plaintiffs with an opportunity to file a second amended complaint. (D.E. No. 99).

On May 12, 2020, Plaintiffs filed the SAC, restating their claims for (i) breach of the 2010 and 2014 clawback policies (Counts I and II); (ii) breach of the standards of business conduct (Count III); and (iii) breach of the separation agreements' representations (Count IV). (*See* SAC ¶¶ 124–70). Defendants now move to dismiss the SAC arguing, *inter alia*, that Plaintiffs failed to cure the deficiencies previously identified by the Court. (D.E. Nos. 120 & 122).

## II.    LEGAL STANDARDS

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.    ANALYSIS

At oral argument, the Court rejected certain of the parties' arguments, including Frissora's attempt to reargue for dismissal of Counts I and II and Plaintiffs' argument that Rule 12(g)(2) barred the Court from considering certain of Frissora's arguments. (D.E. No. 202, Transcript of April 13, 2021 Oral Argument ("April 2021 OA Tr.") at 6:21–8:6). With those issues resolved, the Court turns to the parties' remaining arguments.

### A.    Judicial Estoppel

Frissora argues that Plaintiffs are estopped from arguing that Defendants acted grossly negligent and in violation of the company's standards because Plaintiffs have—in defense of themselves in other litigation and before the SEC and Hertz's shareholders—represented the opposite. (D.E. No. 121 ("Frissora Mov. Br.") at 21–23). Frissora cites excerpts from Plaintiffs'

briefs to the Third Circuit, an SEC Presentation, and the restatement itself in which Plaintiffs, *inter alia*, rejected the notion that Frissora knew or should have known about improper accounting and created a culture of fraud.

"Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010). There are three threshold requirements for applying the doctrine of judicial estoppel:

> First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position "in bad faith*–i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct.

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779–80 (3rd Cir. 2001)).

The Court declines to exercise its discretion to apply the doctrine of judicial estoppel. Although there are perhaps inconsistencies between the position taken by Plaintiffs in prior litigation and the position taken by Plaintiffs here, it is not so apparent that the positions are *irreconcilably* inconsistent, in light of the different claims in each litigation and the different pleading standards that apply to such claims.[1] Relatedly, the Court is not prepared to determine that Plaintiffs changed their positions in bad faith. Again, the different claims at issue here may provide at least some explanation for the Plaintiffs' positions. Without more direct evidence of

---

[1] Regarding Hertz's inconsistent positions, Frissora heavily relies on a Hertz-produced "Presentation to SEC Enforcement Division Staff," which he claims is integral to the SAC and explicitly relied upon. (Frissora Mov. Br. at 10 n.5). Although the SEC investigation is referenced in the SAC, the presentation itself is not.

6

bad faith, the Court is not inclined to exercise its discretion to apply the doctrine of judicial estoppel.

## B.    Breach of Standards of Business Conduct (Count III)

Defendants proffer several reasons to dismiss Plaintiffs' revised claim for breaches of the standards of business conduct.  As discussed in more detail below, the Court expresses some doubt as to the viability of this claim.   Ultimately, however, the Court finds that the majority of Defendants' arguments ask the Court to analyze issues that go beyond the sufficiency of the SAC. Thus, at this motion to dismiss stage, the Court permits the breach of standards claim to proceed against both Defendants, with some exceptions.

### i.    *Deficiencies from Prior Complaint*

Defendants argue that Plaintiffs still fail to identify the relevant version(s) of the standards that form the basis of their claim and which provisions of those standards Defendants allegedly breached.  (Frissora Mov. Br. at 15–18; D.E. No. 123 ("Zimmerman Mov. Br.") at 6–7).  As a result, Defendants argue, Plaintiffs do not satisfy the notice pleading standard.

The Court acknowledges that Plaintiffs' claim for breach of the standards of business conduct has been a moving target throughout this litigation.  In the FAC, Plaintiffs alleged a claim for breach of the standards of business conduct.  (FAC ¶¶ 112–17).  In their motions to dismiss the FAC, Defendants pointed out that, throughout Defendants' employment at Hertz, the standards of business conduct were revised, and thus there are potentially multiple relevant versions of the standards.  (D.E. No. 57-1 at 17–18; D.E. No. 58-1 at 18).  Accordingly, Defendants argued that Plaintiffs failed to adequately allege which version or versions of the standards formed the basis of their claim and which provision(s) within those version(s) Defendants allegedly breached.  (D.E. No. 57-1 at 17–18; D.E. No. 58-1 at 18).

When the Court held oral argument on Defendants' motions to dismiss the FAC, the Court questioned Plaintiffs on these issues. After much discussion, counsel for Plaintiffs represented to the Court that the 2011 versions of the standards formed the basis of this claim. (March 2020 OA Tr. at 39:2–42:3).[2] Counsel for Plaintiffs also walked through the 2011 standards and pointed out some of the particular provisions that Defendants allegedly breached and acknowledged that no such allegations appeared in the FAC. (*Id.* at 42:7–44:24). Following oral argument, the Court dismissed this claim without prejudice and allowed Plaintiffs an opportunity to amend the FAC to properly allege which standards and which provisions formed the basis of the claim, as discussed at oral argument. (Prior Decision at 6:17–7:14).

Contrary to what was represented at oral argument, in the SAC, Plaintiffs allege violations of all standards of business conduct that were in effect between 2009 and 2014. (SAC ¶ 146). However, when quoting the relevant provisions that Defendants allegedly breached, the SAC includes citations to the 2012 version of the standards only. (*See id.* ¶¶ 148 n.3, 150 n.4, 151 n.5, 152 n.7 & 155 n.9). To make matters more confusing, in their opposition brief, Plaintiffs claim to "make clear that the Standards at issue are those that were in effect between 2011 and 2014," omitting any versions in effect between 2009 and 2010. (D.E. No. 141 ("Pls. Opp. Br.") at 6).

At the April 13, 2021 oral argument, the Court, again, questioned Plaintiffs on these issues. During the course of that questioning, Plaintiffs confirmed that they are alleging claims based on all versions of the standards that were in effect between 2009 and 2014. (SAC ¶ 146; April 2021 OA Tr. at 19:7–20:13). However, Plaintiffs also clarified that there were only three relevant

---

[2]     At least part of the rationale behind Plaintiffs' decision to rely on the 2011 standards and not the 2009 standards seemed to be that the 2011 standards contained a specific form for executives to sign, whereas the 2009 standards contained no such form. (March 2020 OA Tr. at 41:18–24).

versions in effect during those years—the 2009 standards, the 2011 standards, and the 2012 standards. (April 2021 OA Tr. at 38:8–13).

With that backdrop, the issue for the Court is whether Plaintiffs adequately plead claims based on all three versions of the standards of business conduct.

Our notice pleading standards require that Defendants be given fair notice of what the claim against them is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2). Moreover, a plaintiff must identify the relevant provision or provisions of the contract that the defendants allegedly breached. *Grande Village LLC v. CIBC Incorporated*, No. 14-3495, 2015 WL 1004236, at *5 (D.N.J. March 6, 2015).

As to any claims based on the 2011 and 2012 versions of the standards, the Court finds that the SAC is sufficient. Not only does the SAC identify both versions as a basis for the claim, but also it cites to particular provisions which appear in both the 2011 and 2012 standards. (*Compare* SAC ¶¶ 146–52, *with* D.E. No. 109-4 at 28 & 33 (excerpts of 2011 standards), *and* D.E. No. 109-4 at 4, 5 & 15 (excerpts of the 2012 standards)).[3]

However, the Court finds that the SAC fails to put Defendants on notice of any claim based on the 2009 version of the standards. The 2009 version does not contain the same language that is quoted in the SAC as the basis for the claim. At oral argument, counsel for Plaintiffs argued that the 2009 version of the standards imposed obligations on Defendants that are similar to the obligations described in the 2011 and 2012 versions. (April 2021 OA Tr. at 20:17–25:24; 28:6–30:14). But it is not Defendants' job—nor this Court's job—to search through the 2009 version of the standards to determine which provisions might possibly describe obligations similar to those

---

[3]     D.E. No. 109-4 is one document which includes the three versions of the standards. Because the document lacks consecutive page numbering, the Court references the page numbers generated by the Court's electronic case filing system on the upper-righthand corner.

quoted in the SAC. *See K.J. v. Greater Egg Harbor Regional High School Bd. of Educ.*, No. 14-0145, 2015 WL 5039460, at \*6 (D.N.J. Aug. 26, 2015) (explaining that it is not the Court's job to find facts to support a legal claim). In a contract case such as this one, particular words matter, and Defendants are entitled to notice on which provisions they breached and how they breached those provisions.

Accordingly, the Court will dismiss Count III to the extent it relies on the 2009 version of the standards of business conduct. The Court will address the remainder of Defendants' arguments for dismissal of this claim under the premise that the claim survives to the extent it is based on the 2011 and 2012 versions of the standards of business conduct.

### ii.    *Vagueness*

Defendants next argue that the claim for breach of the standards of business conduct should be dismissed because the particular provisions Plaintiffs rely on are too vague to be enforceable. (Frissora Mov. Br. at 18–19; Zimmerman Mov. Br. at 7–9).

In New Jersey[4], "[a] contract is unenforceable for vagueness when its terms are too indefinite to allow a court to ascertain with reasonable certainty what each party has promised to do." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1025 (D.N.J. 1995). "The terms of a contract are certain if the court can determine the existence of a breach and provide an adequate remedy. If performance cannot be ascertained, then the parties have not entered into a legally enforceable contract." *Big M, Inc. v. Dryden Advisory Grp.*, No. 08-3567, 2009 WL 1905106, at \*14 (D.N.J. June 30, 2009) (internal citations omitted). "The law generally and in New Jersey does not favor voiding a contract for vagueness." *Lo Bosco*, 891 F. Supp. at 1026.

---

[4]    The parties disagree as to whether New Jersey or Delaware law applies to this claim; however, there is no conflict between these two states' laws that requires the Court to resolve any choice-of-law dispute.

Similarly, to determine what qualifies as sufficiently definite, Delaware has adopted the test from the Restatement (Second) of Contracts § 33(2), which suggests that terms are sufficiently definite if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018). "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Id.*

At this early motion to dismiss stage, the Court declines to conclude that the provisions relied upon are too vague to be enforceable. Admittedly, many of the provisions cited are somewhat vague, at least on their face. For instance, Plaintiffs allege that Defendants were required to "lead by a positive example" and "promote an open door policy." (SAC ¶ 152). Other provisions, however, have less facial ambiguity; for example, Plaintiffs allege that Defendants were required to maintain accurate books and records. (*Id.* ¶ 151). As the case proceeds, Plaintiffs may indeed face an uphill battle to prove that the provisions cited (and perhaps the business standards as a whole) created binding and definitive obligations on Defendants and that Defendants breached those same obligations.[5] But for pleading purposes and without the benefit of a full record, the Court cannot conclude that the provisions of the standards are too vague to be enforceable.

### iii. *Sufficiency of the Allegations*

Defendants also argue that the SAC does not adequately allege that Defendants breached any specific provision of the standards. The Court disagrees.

---

[5] In this regard, the Court notes that the vagueness question raised in the instant motions is somewhat similar to Defendants' arguments raised in their motions to dismiss the FAC that the business standards as a whole cannot constitute a contract. The Court rejected that argument as premature and finds the same outcome appropriate here. Defendants are free to raise these arguments at a later stage in the litigation.

To start, Frissora argues that "Hertz actually does not allege how Frissora supposedly violated the Standards." (Frissora Mov. Br. at 20). Frissora selectively focuses on Plaintiffs' allegations that Frissora breached the standards by violating the "core principles" of the standards and acting "anathema" to those core principles. (*Id.* (quoting SAC ¶¶ 150–53)). Such pleading is circular, according to Frissora, because it is analogous to pleading that he violated the standards by violating the standards.

But Frissora ignores other allegations in the SAC setting forth additional provisions that he allegedly breached. Plaintiffs allege that Frissora violated the standards by, *inter alia*, failing to maintain accurate books and records, failing to lead by a positive example, failing to promote an open-door policy, failing to train employees on the company policies, failing to respond to concerns expressed by employees, and acting illegally or unethically. (*See* SAC ¶¶ 150–53). These allegations suffice to put Frissora on notice of the provisions that form the basis of the claim.

Zimmerman, too, argues that there are insufficient allegations pertaining to his specific breach(es) of the standards. Plaintiffs allege that Zimmerman breached the standards of business conduct by failing to "speak up" to report Frissora's violations of the standards.[6] (SAC ¶¶ 154–59). Zimmerman argues that there are insufficient allegations about what he allegedly failed to speak up about. (Zimmerman Mov. Br. at 10–20). According to Zimmerman, Hertz alleges three potential underlying violations of the standards that Zimmerman failed to speak up about: (i) Frissora's improper tone at the top; (ii) a failure to maintain honest and accurate books and records; and (iii) possible improper payments made to Brazilian government officials. (*Id.* at 9–10). The Court finds that the claim against Zimmerman survives based on the first two categories of allegations.

---

[6] Zimmerman also argues that the obligation to "speak up" is too vague to be enforceable, but the Court rejects that argument for the reasons stated in Section III.B.ii.

As to Frissora's improper tone at the top, Zimmerman argues that any allegations pertaining to Frissora's tone are insufficient because the standards do not address tone at all, and thus the standards "plainly do not obligate Zimmerman to 'speak up' about conduct that the Standards do not even address." (*Id.* at 11). However, Zimmerman reads Plaintiffs' allegations and the standards provisions relied upon too literally and ignores the additional context that the other allegations in the SAC provide for this claim.

Plaintiffs allege that Frissora's inappropriate tone at the top (which is described in detail in the SAC) violated various provisions of the standards, including the standards' mandates to lead by positive example, to promote an open-door policy where employees were comfortable asking questions, to respond to concerns raised by employees, to act ethically and legally, and to maintain accurate books and records (among others). (SAC ¶¶ 148–53). Plaintiffs allege that Zimmerman personally witnessed Frissora's conduct and inappropriate tone at the top, and therefore witnessed these alleged breaches of the standards, obligating him to "speak up." (*Id.* ¶¶ 154–57). Based on these allegations, the Court cannot agree with Zimmerman that the SAC lacks sufficient allegations pertaining to how Frissora's tone at the top violated the business standards.[7]

Zimmerman similarly reads the SAC too narrowly with respect to the allegations pertaining to the standards' requirement to maintain accurate books and records. Zimmerman argues that Plaintiffs fail to allege that Zimmerman was responsible for, or even involved in any accounting policy changes; it follows, according to Zimmerman, that he could not be responsible for failing

---

[7] Zimmerman posits that Plaintiffs' claim pertaining to his failure to speak up is based on two emails sent to Zimmerman in 2014, wherein employees reported Frissora's conduct to him. (Zimmerman Mov. Br. at 11–13). Zimmerman argues that these emails are irrelevant because they were sent *after* the restatement period and could not have caused the restatement or Hertz's claimed damages in connection with this claim. (*Id.* at 12). But these two emails are not the only factual allegations pertaining to Zimmerman's knowledge of Frissora's conduct and his failure to speak up—Plaintiffs allege that Zimmerman witnessed Frissora's conduct first-hand as a member of Frissora's senior management team, at the weekly meetings he attended with that team, and through his numerous interactions with Frissora. (SAC ¶ 155). The emails, although dated after the restatement period, provide some additional context for the factual allegations.

to advise the audit committee of any such policy changes. (Zimmerman Mov. Br. at 14–16). However, in the context of this claim and Zimmerman's obligation to "speak up," Plaintiffs need not allege that Zimmerman was actually responsible for or involved in the accounting policy changes. Rather, Plaintiffs must allege, as they have done, that Frissora's tone at the top and instructions to his employees led to various accounting changes that violated the standards' mandate to maintain honest and accurate books and records, and that Zimmerman was aware of Frissora's conduct and the resulting changes and failed to speak up. (SAC ¶¶ 152 & 155–56).

As to the third category of allegations relating to supposed improper payments to Brazilian government officials, the Court agrees with Zimmerman that the SAC does not contain enough factual allegations pertaining to these payments. However, it is also not clear that these allegations are intended to form the basis of Plaintiffs' claim against Zimmerman for breach of the business standards. The payments are mentioned twice in the SAC, but both mentions are brief and conclusory. (*See* SAC ¶ 22 (Zimmerman was "aware of possible improper payments to Brazilian government officials, but failed to disclose what he knew to the Board."); *id.* ¶ 157 (similar)). Thus, to the extent these allegations are intended to serve as an independent basis for a breach of the standards of business conduct, the Court finds that they are insufficient, and thus Plaintiff is barred from pursuing these allegations. Nevertheless, this claim survives against Zimmerman for the reasons discussed *supra*.

### iv. Damages

Defendants make various arguments pertaining to the amount of damages Plaintiffs seek for their claim for breaches of the business standards. Frissora argues that the standards of business conduct expressly limit Plaintiffs' remedy to disciplinary action up to and including termination, and that Plaintiffs therefore cannot recover the $200 million in damages they seek in connection

with this claim. (Frissora Mov. Br. at 23–24). Frissora also incorporates by reference an argument he made in his motion to dismiss the FAC that Plaintiffs claim damages beyond those that were reasonably foreseeable as a result of any alleged breach of the standards of business conduct. (*Id.* at 24 n. 10). Zimmerman similarly argues that Plaintiffs have not alleged how his breaches of the standards caused Plaintiffs' damages. (Zimmerman Mov. Br. at 13–14 & 17–18).[8] Although Plaintiffs may or may not ultimately be able to prove their entitlement to the exorbitant amount of damages they seek, the Court finds that Plaintiffs' damages allegations are sufficient for pleading purposes.

To start, the Court disagrees with Frissora that a "plain reading" of the business standards reveals that the most serious penalty for a violation of the standards is termination, not money damages. In support of his argument, Frissora cites to the following provision from the 2012 standards:

> In addition to damaging the Hertz brand, actions that violate our Code may also violate the law. This subjects the individuals involved and our Company to possible criminal and civil liabilities. Failing to follow our Code also means that the Company may take disciplinary action, up to and including termination.

(Frissora Mov. Br. at 24 (citing 2012 Standards at B.6)). Frissora argues that "under a plain reading of this language, $200 million in damages is not a form of 'disciplinary action,' and it certainly is not <u>less than</u> the 'consequence' of termination." (*Id.* (emphasis in original)). Plaintiffs counter that Frissora improperly assumes that damages are not included in the phrase "up to and including," and that the quoted language is inclusive, not exclusive. (Pls. Opp. Br. at 18–19). Plaintiffs also

---

[8]    Regarding damages, Zimmerman mainly focuses on Plaintiffs' failure to allege how Zimmerman's failure to speak up about the 2014 emails (which occurred after the restatement period) and possible improper payments to Brazilian officials caused their damages. On the former point, the Court has already explained that Plaintiffs' claim is not based solely on the 2014 emails. (*See supra* n.7). On the latter point, as already noted, the Court agrees that Plaintiffs allegations with respect to the payments to Brazilian government officials are insufficient.

point out that limitations of remedies provisions for the non-breaching party must be clear and conspicuous. (*Id.* at 19).

Frissora's reading of this provision may or may not ultimately be correct, but Plaintiffs' reasonable contract interpretation is sufficient to overcome a motion to dismiss. *Novel Drug Solutions, LLC v. Imprimis Pharms., Inc.*, No. 18-539, 2018 WL 4795627, at *3 (D. Del. Sept. 26, 2018); *Mercedes-Benz USA, LLC v. ATX Group, Inc.*, No. 08-3529, 2009 WL 2255727, at *8 (D.N.J. July 27, 2009). Accordingly, at this juncture, the Court rejects Frissora's argument that Plaintiffs' money damages are precluded by a plain reading of the standards.

As to Defendants' other arguments—that Plaintiffs have not adequately pled causation and/or the reasonable foreseeability of their damages, the Court finds that Plaintiffs' allegations are sufficient to withstand a motion to dismiss. Plaintiffs allege that Defendants' breaches of the standards caused "increased financial and other costs and burdens resulting from the required Restatement and the various lawsuits and investigations that predictably followed, as well as the predictable cost to Hertz of remedying the continuing impact of those breaches . . . ." (SAC ¶ 158). Plaintiffs further allege that these damages were reasonably foreseeable consequences of Defendants' breaches, and they were especially foreseeable given Defendants' positions as sophisticated executives of the company who were generally aware of the expenses and burdens that would accompany a restatement. (*Id.* ¶ 159). While Plaintiffs may or may not be able to prove their entitlement to these damages, their allegations are sufficient under the federal pleading standards. *See Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 15-0537, 2016 WL 659105, at *6 (M.D. Pa. Feb. 17, 2016) ("While Defendant is correct that [plaintiff] will need to prove that consequential damages 'were reasonably foreseeable and within the contemplation of the parties at the time they made the contract,' to recover consequential damages for breach of

contract . . . , federal pleading standards simply do not require [plaintiff] to prove, in its Complaint, its entitlement to damages for properly stated causes of action."); *Clearpath Util. Sols., LLC v. US Crossings Unlimited, LLC*, No. 15-1620, 2016 WL 4987092, at *3 (W.D. Pa. Sept. 19, 2016) ("[W]e decline plaintiff's invitation to parse through each component of defendant's claimed damages and scrutinize it for proof that will permit an ultimate recovery."); *Corps Logistics, LLC v. Dutil*, No. 20-6683, 2021 WL 795198, at *11 (D.N.J. Feb. 28, 2021) ("At pleading stage, however, the Court will decline 'to resolve factual and legal issues regarding the availability' of damages.").

### C. Breach of the Separation Agreement Representations (Count IV)

Finally, Defendants move for dismissal of Plaintiffs' claim for breaches of the separation agreements' representations. Plaintiffs allege that Defendants breached certain representations contained in the separation agreements, and as a result, Plaintiffs seek to recover the monies paid to Defendants pursuant to those agreements. (SAC ¶¶ 160–70). As with Count III, this claim was the subject of a prior motion to dismiss and extensive discussion at both the March 2020 and April 2021 oral arguments. Before addressing Defendants' substantive arguments, the Court addresses Defendants' argument that this claim should be dismissed based on Plaintiffs' failure to follow the Court's prior instructions.

Throughout this litigation, there has been much back and forth about this claim and whether and how it should be pled in the alternative to Plaintiffs' other claims. At the March 2020 oral argument, Plaintiffs' counsel acknowledged that this claim is a breach of contract claim through which Plaintiffs seek to rescind the separation agreements and recover the monies paid to Defendants in connection with those agreements. (March 2020 OA Tr. at 71:1–73:22). After questioning by the Court on the seemingly inconsistent remedies sought in Plaintiffs' 2014

clawback claim (which seeks *enforcement* of an agreement to recover the golden parachute payments) and this claim (which seeks *rescission* of an agreement to recover the golden parachute payments), counsel acknowledged that all of Plaintiffs' claims, with the exception of the breach of standards claims, should be pled in the alternative. (*Id.* at 83:2–17). Part of this discussion was based on an apparent consensus and an acknowledgement by Plaintiffs' counsel that the clawback policies at issue are not stand-alone contracts, but that they were incorporated by reference into various agreements, including the separation agreements. (*Id.* at 8:18–22 ("Mr. Beigel: First, I'm not disagreeing with Your Honor's suggestion that they by themselves, without reference to anything else they're not contracts, but they become contracts because they're incorporated into compensation agreements."). Thus, the Court understood the 2014 clawback claim to be a claim for breach of the separation agreements, through which Plaintiffs sought to *enforce* their agreements to recover monies paid to Defendants; and the Court understood the breach of separation agreement claim to be an alternative claim to *rescind* the separation agreement to recover the same monies. As a result, in its ruling, the Court directed Plaintiffs to plead these claims in the alternative. (Prior Decision at 13:15–20).

In the SAC, and as clarified at oral argument, Plaintiffs backtracked on nearly all of the representations made at the March 2020 oral argument. In the SAC, under the header for the breach of the separation agreements claim (Count IV), Plaintiffs state that the claim is "asserted in the alternative to Count III," which is the breach of standards claim and the only claim Plaintiffs' counsel previously stated was *not* an alternative claim. (SAC at 47). There is nothing below Count IV indicating that it is meant to be pled in the alternative to the 2014 clawback claim as discussed at the March 2020 oral argument. Rather, Plaintiffs more discretely state, in a discussion of their

damages, that "as an alternative theory of recovery, Frissora and Zimmerman are liable to the Company as a result of their breaches of their respective Separation Agreements." (SAC ¶ 120).

Based on the new representations in the SAC, Defendants argue that Plaintiffs' claim should be dismissed for failure to follow the Court's instructions regarding alternative pleading. (Frissora Mov. Br. at 26; Zimmerman Mov. Br. at 20–21). At the April 2021 oral argument, the Court questioned Plaintiffs about this claim again. In response to that questioning, Plaintiffs' counsel explained that Counts III and IV are alternative claims because of the overlap in damages. (April 2021 OA Tr. at 106:8–16). Counsel also backtracked on prior representations that the clawback policies are not stand-alone contracts. (*Id.* at 93:10–16). Thus, counsel explained Plaintiffs' position that there is not an inconsistency between Counts II and IV as pled because the former seeks to enforce the clawback policies, whereas the latter seeks to rescind the separation agreement. (*Id.* at 93:14–95:7; 98:22–99:11). Regardless, counsel acknowledged that Count IV is an alternative claim to Count II, which Plaintiffs plan to pursue in the event the Court ultimately finds in favor of Defendants on Count II. (*Id.* at 87:11–23 (citing to SAC ¶ 120) & 98:22–99:11).

The Court shares Defendants' frustration with Plaintiffs' changing position with respect to this claim (and others). However, setting aside counsel's various representations at oral argument, Plaintiffs are permitted to plead their claims in the alternative, and even though it was done somewhat inartfully, Plaintiffs have done so here. As set forth above, at oral argument, Plaintiffs clarified that they intend to argue that the clawback policies are stand-alone contracts and that Count II is grounded in the clawback policy, not the separation agreement. Plaintiffs further explained that, if the Court ultimately rules in Defendants' favor on Count II, and if Plaintiffs do not recover all of the damages asserted in Count III, Plaintiffs plan to seek the alternative remedy of rescission through Count IV. Although the allegations in the SAC could be clearer, the SAC

allows the Court to conclude that Count IV is an alternative theory of recovery that Plaintiffs intend to rely upon if they cannot recover the golden parachute payments through Count II or III. (SAC at 47; *id.* ¶ 120). Accordingly, the Court will not dismiss the SAC on these grounds.

Nevertheless, the moving target stops here. Plaintiffs are bound by the allegations in the SAC with respect to this claim and are bound by this Opinion with respect to how this claim may proceed alongside the others. The Court will not hesitate to dismiss any duplicative or inconsistent claims at the appropriate stage of the litigation.

Turning to Defendants' more substantive arguments, Defendants make overlapping arguments as to why this claim is insufficiently pled. Plaintiffs allege that Frissora and Zimmerman each represented that (i) they had not knowingly violated the company's standards of business conduct; and (ii) they had not facilitated and had no knowledge of any financial or accounting improprieties or irregularities within Hertz. (*Id.* ¶¶ 165–66). According to Plaintiffs, Defendants also agreed that Hertz entered into the separation agreements in reliance on their representations, and those representations turned out to be false. (*Id.* ¶¶ 167–68). As such, Plaintiffs allege that Defendants breached the separation agreements, and Plaintiffs seek to recover the monies paid to Defendants pursuant to those agreements. (*Id.* ¶¶ 169–70).

Defendants both argue that Plaintiffs' allegations regarding their knowing violations of the business standards fail because the claim for breach of the business standards fails. (Frissora Mov. Br. at 26; Zimmerman Mov. Br. at 21). Because the breach of standards claim survives, the Court rejects this argument.

Next, Defendants argue that this claim fails because Plaintiffs omit important language from the separation agreement excerpts quoted in the SAC. Defendants explain that they represented that they did not facilitate, engage in, or have knowledge of any financial or accounting

improprieties or irregularities within Hertz "except with respect to any information that ha[d] been provided through the Separation Date by a third party auditor in any oral or written report to both [Defendants] and the Board (or any committee thereof)." (Zimmerman Mov. Br. at 22 (quoting Separation Agreement § 10(b)); Frissora Mov. Br. at 28 n.12[9]). Based on this additional language, Defendants argue that Plaintiffs have not alleged that they had facilitated, engaged in, or had knowledge of financial or accounting improprieties that had not already been presented to the board or audit committee prior to Defendants' separation. (Zimmerman Mov. Br. at 22; Frissora Mov. Br. at 28 n.12).

While Defendants may ultimately be correct, the Court may not resolve this question at the motion to dismiss stage. Plaintiffs have sufficiently alleged the contract at issue, the supposed breach of that contract, and their damages. Moreover, with respect to timing, Plaintiffs allege that the need for the restatement was realized in November 2014, but that the restatement was filed with the SEC in July 2015 (after Defendants' resignations). (SAC ¶¶ 90–91). Drawing all reasonable inferences in favor of Plaintiffs, as the Court must do at the motion to dismiss stage, it is plausible that Plaintiffs' internal investigation in connection with the Restatement was ongoing at the time of Defendants' resignations, and that certain allegations in the SAC were known to Defendants at the time of their agreements that were not yet known to the board or audit committee. Accordingly, the Court rejects Defendants' argument pertaining to the timing of these allegations; Defendants are free to argue this point at the appropriate stage of the litigation.[10] *Baker v. Moon Area Sch. Dist.*, No. 15-1674, 2018 WL 4057179, at *5 (W.D. Pa. Aug. 27, 2018) ("Both of

---

[9]    Defendants each attached their separation agreement to their motion. (*See* D.E. Nos. 121-4 & 123-1). The relevant provision appears at section 10(b) in Zimmerman's agreement and at section 9(b) in Frissora's agreement.

[10]    The Court also notes that this argument is one that could have been raised by Defendants in their prior motions to dismiss, but it was not. (*See* FAC ¶¶ 75 & 124; D.E. Nos. 57-1 & 58-1).

Defendants' arguments rely on factual allegations beyond the pleadings concerning the timing and nature of events during MASD's investigation and the termination process. The Court finds that these matters are better evaluated at the summary judgment stage.").

Finally, the Court addresses Frissora's arguments that there are insufficient factual allegations in the SAC pertaining to his breach of the representations—specifically, how he facilitated, engaged in, or had knowledge of accounting improprieties or irregularities. (Frissora Mov. Br. at 26–27).[11]

The Court finds that Plaintiffs' allegations are sufficient to survive a motion to dismiss. With respect to this claim, the SAC resolves many of the Court's stated concerns with respect to the FAC. The FAC heavily relied on group pleading to allege any wrongdoing by either defendant. The SAC adds numerous individualized allegations against Defendants. (*See* D.E. No. 110 (redlined version of the SAC)). The allegations against Frissora detail the pressurized environment he created and what he demanded of his employees. (*See, e.g.*, SAC ¶¶ 39–83). Frissora's demands often pertained to meeting projected financial targets and closing large financial gaps— demands which, according to Plaintiffs, were unrealistic and nearly impossible to meet without engaging in accounting gimmicks that, over time, added up and contributed to the need for the restatement. (*See id.* ¶¶ 39–94).

These allegations allow the plausible inference that Frissora (at least) facilitated financial or accounting irregularities or improprieties contrary to what was asserted in his separation agreement. Whether these allegations may ultimately prove true, and whether Plaintiffs can

---

[11]    Zimmerman does not challenge the sufficiency of the allegations against him other than with respect to the timing issue discussed *supra*.

ultimately succeed on this claim, are issues that the Court cannot address at this motion to dismiss stage. Accordingly, the Court rejects Frissora's final argument for dismissal of Count IV.[12]

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' motions are DENIED; Plaintiffs' claims may proceed as limited by this Opinion. An appropriate Order accompanies this Opinion.

s/ *Esther Salas*

**Esther Salas, U.S.D.J.**

---

[12] Frissora also assumes that Plaintiffs seek a total of $200 million in damages in Count IV—an amount that goes beyond the severance payments—and Frissora seeks to strike this damages demand. (Frissora Mov. Br. at 28). Plaintiffs do state that their damages include "**without limitation**, the monies paid to [Defendants] pursuant to those agreements, . . . and the time-value of money losses resulting from those payments." (SAC ¶ 170 (emphasis added)). However, there is no allegation that Plaintiffs seek the full $200 million that they seek in connection with Count III. Plaintiffs' counsel admitted as much at oral argument. (*See* April 2021 OA Tr. at 106:17–19).