**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HERTZ CORPORATION and HERTZ GLOBAL HOLDINGS, INC., | Civil Action No. 2:19-cv-08927 |
| *Plaintiffs*, | Hon. Evelyn Padin, U.S.D.J. |
| | Hon. Cathy L. Waldor, U.S.M.J. |
| v. | |
| MARK FRISSORA, et al., | **Return Date:  October 19, 2022** |
| | **Oral Argument Requested** |
| *Defendants*. | |

**DEFENDANT MARK FRISSORA'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Andrew J. Levander
David A. Kotler
Jeffrey A. Brown
May K. Chiang
Patrick N. Andriola
DECHERT LLP
Three Bryant Park
New York, NY 10036
(212) 698-3500

Gavin J. Rooney
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500

*Attorneys for Defendant Mark Frissora*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................1

I.      HERTZ'S CLAWBACK CLAIMS FAIL ......................................................................1

        A.      The Clawback Resolutions Are Not Standalone Contracts ................................... 1

        B.      This Court Already Has Rejected Hertz's "Alternative" Request ......................... 2

        C.      Hertz Fails To Cite Any Binding—Or Even Persuasive—Authority .................... 3

        D.      Hertz's New Theories Are Precluded And Fail ....................................................... 5

        E.      Hertz Is Not Entitled To Nearly All Of Its Clawback Damages............................ 5

                1.      Frissora's Expert Reports Are Proper ............................................................ 5

                2.      There Are No Disputed Fact Issues On Hertz's Clawback Damages......... 6

II.     HERTZ'S STANDARDS CLAIM FAILS .......................................................................8

        A.      The Standards Are Not Enforceable As A Matter of Law ..................................... 8

        B.      Causation And Foreseeability Are Legal Issues Appropriately Resolved At
                Summary Judgment ........................................................................................... 10

III.    HERTZ'S RECAST RECISSION CLAIM STILL FAILS .............................................11

CONCLUSION...........................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambulatory Services of Puerto Rico, LLC v. Sankar Nephrology Group, LLC,*
    2019 WL 4192738 (N.D. Tex. Sept. 3, 2019)................................................................3

*Bliss & Laughlin Indus., Inc. v. Malley,*
    364 So. 2d 65 (Fla. Dist. Ct. App. 1978) ..............................................................11

*Booth v. Land Filling & Improvement Co.,*
    68 N.J. Eq. 536 (Ch. 1905) ....................................................................................3

*Caro Assocs. II, LLC v. Best Buy Co.,*
    2012 WL 762304 (D.N.J. Mar. 6, 2012)..............................................................10

*Cent. Reg'l Emps. Ben. Fund v. Cephalon, Inc.,*
    2010 WL 1257790 (D.N.J. Mar. 29, 2010)............................................................3

*Daubert v. NRA Group, LLC,*
    189 F. Supp. 3d 442 (M.D. Pa. 2016) ....................................................................7

*Doe v. Princeton Univ.,*
    2018 WL 2396685 (D.N.J. May 24, 2018)............................................................8

*Haft v. Dart Grp. Corp.,*
    877 F. Supp. 896 (D. Del. 1995).........................................................................4, 5

*Jakelsky v. Friehling,*
    33 F. Supp. 2d 359 (D.N.J. 1999) ........................................................................10

*Jose Luis Pelaez, Inc. v. Pearson Educ., Inc.,*
    2019 WL 2403088 (D.N.J. June 7, 2019) ..............................................................3

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.,*
    125 F. Supp. 3d 1155 (D. Colo. 2015)................................................................8, 9

*LabMD Inc. v. Boback,*
    2022 WL 3724716 (3d Cir. Aug. 30, 2022)...........................................................6

*Longo v. Campus Advantage, Inc.,*
    2022 WL 605304 (M.D. Fla. Mar. 1, 2022) ........................................................11

*Melendez v. Target Corp.,*
    2022 WL 1617709 (D.N.J. May 23, 2022).............................................................6

*Swider v. Ha-Lo Indus., Inc.*,
    134 F. Supp. 2d 607 (D.N.J. 2001) ..................................................................................10

*Tourtellotte v. Eli Lilly & Co.*,
    636 F. App'x 831 (3d Cir. 2016) ........................................................................................9

*Ware Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*,
    2019 WL 1470129 (D.N.J. Apr. 3, 2019) ...........................................................................7

## OTHER AUTHORITIES

FRCP 11 ..................................................................................................................................6

FRCP 26(a) .............................................................................................................................6

FRCP 30(b)(6) ........................................................................................................................6

FRE 702 ..................................................................................................................................6

## PRELIMINARY STATEMENT

In a futile attempt to avoid summary judgment on its claims, Hertz's[1] opposition persists

with theories that are foreclosed by the law of the case, misrepresents Judge Salas' prior rulings,

complains aimlessly about Frissora's expert reports, and deflects attention away from the

dispositive plain language of the documents that underlie its claims.  None of these sideshows

succeed, and nothing can mask that summary judgment in Frissora's favor is warranted.

Hertz is bound by its theory that the Clawback Policies as enforced against Frissora are

standalone contracts, and this theory fails as a matter of law.  Hertz offers no evidence in support

of its clawback damages, although it now concedes that at least $10 million it was seeking prior

to summary judgment was fabricated.  Hertz has come forward with no evidence that the generic

Standards are sufficiently definite and binding to constitute enforceable contracts.  And Hertz is

not entitled to the "extraordinary remedy" of rescission, no matter how hard it now tries to recast

that claim.  Frissora's summary judgment motion should be granted in its entirety.

## ARGUMENT

I.   **HERTZ'S CLAWBACK CLAIMS FAIL**

A.   **The Clawback Resolutions Are Not Standalone Contracts**

In light of Hertz's repeated efforts to muddy the waters, it is important to remind what

Frissora is, and is not, arguing.  Contrary to Hertz's opposition, Frissora does not argue "that a

corporate policy is never enforceable."  Hertz's Opposition to MFSJ ("HOpp.") at 8.  As Hertz's

Board counsel noted, and Frissora agrees, companies can enforce their clawback policies by

incorporating them into an executive's compensation agreements.  But here, Hertz explicitly has

forfeited that argument.  Hertz's own representations and the law of the case limit it instead to

---

[1] Unless otherwise noted, capitalized terms are as defined in the MFSJ or Frissora's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("MFO").

arguing that the Policies only can be enforced against Frissora as standalone contracts.  *See* ECF

No. 202, 95:22-97:7 (Hertz's representation at oral argument); ECF No. 228, 19-20 (Salas, J.

Order memorializing Hertz's position).  Nothing in Hertz's opposition overcomes this basic fact.

**B.      This Court Already Has Rejected Hertz's "Alternative" Request**

Hertz cannot dispute that it previously represented to the Court that it seeks to enforce the

Policies against Frissora as standalone contracts.  Instead, it now argues that the conclusion that

it abandoned its "incorporation" theory is a "manipulat[ion]" of its words.  HOpp. 6.[2]  But Hertz

is the one engaging in manipulation by claiming the Court allowed it to argue its incorporation

theory "in the alternative."  *Id*. 3.  Hertz omits that it sought to plead its incorporation theory in

the alternative before Judge Salas—and was denied.  ECF No. 202, 101:20-25.

Hertz also misrepresents the Opinion itself.  Contrary to Hertz's opposition (at 6-7),

Judge Salas never allowed Hertz to maintain an incorporation theory for its clawback claims

(Count II) alongside its theory of standalone contract.  Instead, the cited discussion pertains to

Hertz's Separation Agreement claim (Count IV) and whether it was pled appropriately in the

alternative to the Standards Claim (Count III).  ECF No. 228, 19-20.  After expressing that the

Court "shares [Frissora's] frustration with [Hertz's] changing position with respect to this claim

(and others)," it allowed Hertz to plead these non-clawback claims in the alternative.  *Id*. 19-20.

But in the same breath, the Court ordered that Hertz was bound by its theory "that the clawback

policies are stand-alone contracts and that Count II is grounded in the clawback policy, not the

separation agreement."  *Id.* 19.  Judge Salas could not have been clearer.

It is the law of the case that Hertz's clawback claims are brought only under the theory

that the Clawback Policies as against Frissora are standalone contracts.  That Hertz now may

---

[2] Hertz also complains that Frissora does not point to "witness testimony" on this issue.  HOpp.
6.  This is a non-sequitur; the only "proof" needed is the words of this Court and Hertz's counsel.

believe it made a strategic error in its conscious pleading decisions is no excuse to permit yet

another flip-flop.[3]  *See Jose Luis Pelaez, Inc. v. Pearson Educ., Inc.*, 2019 WL 2403088, at *3

(D.N.J. June 7, 2019) (Courts do not "give do-overs on [a party]'s strategic decisions.").

> **C.     Hertz Fails To Cite Any Binding—Or Even Persuasive—Authority**

Hertz would have this Court hold that an unsigned corporate resolution can be enforced

as a standalone contract.  HOpp. 11-16.  Yet Hertz cites no case where (a) any court applying

New Jersey law has held an unsigned corporate resolution on any subject is a standalone

contract, or (b) any court anywhere has held a Clawback Policy to be a standalone contract.  Nor

does Hertz persuasively explain why this Court should be the first to do so.

Hertz indisputably has the burden to prove the existence of a contract.  *See Cent. Reg'l*

*Emps. Ben. Fund v. Cephalon, Inc.*, 2010 WL 1257790, at *5 (D.N.J. Mar. 29, 2010).  But

instead of meeting that burden with evidence or case law, Hertz baselessly nitpicks the cases

cited by Frissora, raising trivial differences.  HOpp. 8-11.[4]  Critically, Hertz does not contest that

none of those cases found that unsigned corporate resolutions can be enforced as standalone

contracts—because they cannot.  *See* MFSJ 14-15.  Hertz also argues that the Policies are

standalone contracts because there was "nothing left to negotiate concerning the Clawback

---

[3] Hertz abandoned its incorporation theory because Section 8(b) of the Separation Agreement would have required it to prove Frissora's gross negligence—a burden that it cannot meet.  *See* MFSJ 7, MFO Opp. 11-16.

[4] For example, Hertz claims that *Booth v. Land Filling & Improvement Co.*, 68 N.J. Eq. 536 (Ch. 1905) should be ignored because it is "118-years-old" and in it the court "agreed there was a contract," but voided it for different reasons.  HOpp. 9.  Not true.  As is the case here, the resolution in *Booth* merely authorized a corporate executive to enter into separate contracts on behalf of the company.  68 N.J. Eq. at 538.  Hertz similarly claims that Frissora "manipulated" a quote in *Ambulatory Services of Puerto Rico, LLC v. Sankar Nephrology Group, LLC*, 2019 WL 4192738 (N.D. Tex. Sept. 3, 2019).  HOpp. 11.  Again not true.  In any event, the language Hertz cites proves Frissora's point, with the court holding that the corporate resolution was "not a contract," but, as here, simply "authorize[d]" further contracts by the corporation.  *Id.*

Policies…or that anyone thought that any necessary term remained unaddressed or otherwise

subject to future negotiation." HOpp. 10.  This assertion, also unsupported by any record cite, is

easily disproven by numerous uncontested facts.[5]  First and foremost, if the Policies were

intended by the parties to be standalone contracts, with "nothing left" to do, they would not have

expressly authorized Hertz's Chief HRO to "take or cause to be taken any and all actions that she

deems necessary, appropriate, and advisable to effectuate and carry out the purposes of the

foregoing resolutions, including … securing the written agreement of each executive officer to

such policy."  Frissora 56.1 ¶¶ 21, 29 (emphasis added).  By the same token, if Hertz was not

required to take any further action to enforce the Policies, then why did its Board counsel advise

that "incorporat[ion] by reference" into executive contracts "provides a contractual basis for

enforcement"?  *Id.* ¶ 32.  These undisputed facts confirm that the clawback resolutions are not

standalone contracts.

Finally, despite agreeing that New Jersey law applies, Hertz relies on a case applying

Delaware law that never has been adopted in New Jersey.  HOpp. 13-15.  That case

acknowledges that, under Delaware law, "[c]orporate resolutions alone do not constitute a

contract," but that "a resolution may be so specific and in such terms as itself to constitute a

contract where accepted and relied on by the other party."  *Haft v. Dart Grp. Corp.*, 877 F. Supp.

896, 905 (D. Del. 1995).  Yet in *Haft*, unlike here, there were no further contracts between the

parties incorporating the terms of the resolution, evidencing an intent for that resolution itself to

be the contract.  The resolution in *Haft* also delineated the parties' names, the contractual

---

[5] Hertz misleadingly asserts that "there is a wealth of undisputed evidence that Frissora and Hertz considered the Clawback Policies to be enforceable." HOpp. 8.  As explained above, the Policies may be enforced when properly incorporated into other agreements.  But Hertz's burden here is to provide evidence demonstrating that the Policies are enforceable against Frissora as standalone contracts.  For this, it provides not a single record cite.

purchase price, and the specific consideration received. *Id*. at 906.  Here, the Policies contain

nothing like those details, and Hertz offers no record evidence of any consideration Frissora

received at the time of the Policies' passage.[6]

### D.  Hertz's New Theories Are Precluded And Fail

Hertz's opposition newly argues that its clawback claims may be governed by two other

documents: his Employment Agreement and Hertz's bylaws.  HOpp. 11-16.  Setting aside that

Hertz is bound by the law of the case on these claims, Hertz's arguments are not legally

cognizable.  To accept Hertz's position on the bylaws is to reach the absurd conclusion that

corporate bylaws are adequate to articulate the mutual obligations of companies and their

executives, and therefore the millions of additional contracts between those parties are

unnecessary.  This accords with neither logic nor precedent and singlehandedly would upend

settled corporate law.  And while the Employment Agreement says Frissora may be terminated

for cause if he violates a material company policy, there is no dispute here that Frissora's

separation from Hertz was <u>without</u> cause.  Frissora 56.1 ¶ 56.

### E.  Hertz Is Not Entitled To Nearly All Of Its Clawback Damages

#### 1.  Frissora's Expert Reports Are Proper

Despite having Frissora's expert reports since January 25, 2022, for the first time Hertz

now raises two principal objections to the reports.  Neither succeeds.

First, Hertz argues that Frissora's expert reports violate the Court's scheduling order.

HOpp. 16.  Not so.  Hertz, as the party with the burden of proof on its claims (*i.e.*, the

"affirmative" party), was required to submit its reports first, and then Frissora (as the "rebuttal"

---

[6] Hertz also reprises its one New Jersey case, *Stengart* (while again omitting the New Jersey Supreme Court's decision on appeal).  HOpp. 15.  As Frissora already has explained, however, that case stands for the proposition that a company policy may be <u>internally</u> enforced, not whether an unsigned board resolution is enforceable as a standalone contract.  MFO 7-8.

party) subsequently would serve his reports.  Nothing in the Scheduling Order or in FRCP 26 or

FRE 702 did or could preclude Frissora from serving reports on issues that Hertz did not address

in its reports.  That Hertz notably chose not to retain a damages expert despite having the burden

of proof in no way precludes Frissora from doing so.

Second, Hertz argues, without any supporting authority, that the Court cannot consider

Frissora's expert reports until they survive a *Daubert* challenge.  HOpp. 17.  Setting aside that

Hertz cites to its own expert report (*e.g.*, HOpp. 25), Hertz could have, but did not, file a *Daubert*

motion or even depose Frissora's experts.  In any event, the admissibility of expert testimony on

summary judgment does not turn on surviving a *Daubert* challenge.  *See LabMD Inc. v. Boback*,

2022 WL 3724716, at *13-15 (3d Cir. Aug. 30, 2022) (abuse of discretion where court

prohibited plaintiff from submitting expert evidence at summary judgment).[7]

### 2.     There Are No Disputed Fact Issues On Hertz's Clawback Damages

Hertz offers minimal defense of its claimed clawback damages.  To begin, Hertz does not

dispute that two clawback damages categories—for incentive compensation that Frissora never

received, and for Frissora's repayment as part of his 2020 SEC settlement—should be

eliminated.  HOpp. 18-19.  These concessions immediately reduce the maximum clawback

damages by more than $10 million.[8]  Indeed, Hertz does not meaningfully refute any of

Frissora's arguments regarding the remaining categories of clawback damages.  Instead, without

---

[7] Hertz also argues that Frissora's expert reports are improper because they are not sworn.
HOpp. 17.  In an abundance of caution, Frissora has provided Hertz with sworn declarations for
its experts' reports, thereby curing any potential form concerns.  *See* Kotler Supp. Cert. ¶¶ 1-4.
*See, e.g.*, *Melendez v. Target Corp.*, 2022 WL 1617709, at *5 & n.5 (D.N.J. May 23, 2022).

[8] Hertz chastises Frissora for not first asking Hertz to stipulate to the non-existence of these two
damages categories.  HOpp. 18-19.  But Hertz has claimed these phantom damages throughout
this case, including in supplemental FRCP 26(a) disclosures (which are governed by FRCP 11)
and its FRCP 30(b)(6) deposition.  Despite having Frissora's damages expert report since
January, it still has not dropped these non-existent damages.

a single case citation, Hertz claims that "questions of law" and "contract-interpretation issues" are inappropriate for summary judgement.  HOpp. 18, 20.  These issues, however, are precisely those decided by courts on summary judgment.  *See, e.g.*, *Ware Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2019 WL 1470129, at *4 (D.N.J. Apr. 3, 2019).

In addition, two of Hertz's especially faulty arguments must be dispelled.  First, Hertz contends, for the first time, that certain testimony from its Rule 30(b)(6) damages designee "was beyond the scope of the Rule 30(b)(6) notice as some sort of 'damages' topic."  HOpp. 18; *see* Hertz Resp. 56.1 ¶¶ 78-83.  This is demonstrably false, since Frissora's Rule 30(b)(6) notice explicitly included "[t]he categories and amounts of Covered Incentive Compensation (used herein as defined in Hertz's Clawback Resolutions) that Hertz contends [Frissora] should repay."  Frissora 56.1 ¶ 72.  Knowing that this argument lacks merit, Hertz also contends that it should be permitted a do-over for its Rule 30(b)(6) witness.  HOpp. 18.  But the time for Rule 30(b)(6) depositions long has expired.  *See Daubert v. NRA Group, LLC*, 189 F. Supp. 3d 442, 459 (M.D. Pa. 2016) ("Under Rule 30(b)(6), a [party] has an obligation to prepare its designee to be able to give binding answers on [its] behalf") (quotations omitted).  Hertz cannot now disavow its own damages testimony simply because that testimony mandates summary judgment against it.

Second, Hertz tries to invent support for clawing back Frissora's 2011 incentive compensation.  As Frissora has shown, Hertz developed no evidence linking Frissora's alleged gross negligence in 2011 to the Restatement.  MFSJ 25-28; Frissora 56.1 ¶¶ 43, 64.  Hertz now raises a portion of Frissora's deposition testimony as "circumstantial" evidence, but that testimony was a recitation of a different witness's generalized comments from 2014 that say nothing about 2011.  HOpp. 17 n.12.  Hertz also argues that the "improper tone at the top" alleged from 2012 to 2014 should be applied back to 2011 (*id.* 17), but it offers no proof in support of this wish.  Contrary to Hertz's suggestions, the Policies do not give the Compensation

7

Committee unfettered discretion to make a clawback determination without supporting evidence.

In sum, if Hertz's clawback claims survive this motion, its maximum allowable damages should be limited to $6.045 million.  *See* MFSJ 17-20.

## II.     HERTZ'S STANDARDS CLAIM FAILS

### A.      The Standards Are Not Enforceable As A Matter of Law

In his moving brief, Frissora pointed to the plain terms of the Standards as well as Hertz's Rule 30(b)(6) deposition testimony to demonstrate that the Standards lack sufficiently binding and definite terms to constitute an enforceable contract.  MFSJ 23-24.  In opposition, Hertz never attempts to explain how provisions calling on employees to "lead by positive example" and "treat others with respect" can be enforced.  Instead, Hertz seeks to limit Frissora's cited cases to their facts, deflects attention from the applicable language of the Standards by pointing to the Separation and Employment Agreements (which are not the basis of its Standards claim), and misrepresents Judge Salas's prior discussion of its claim.  None of these maneuvers changes the conclusion that the Standards are too vague to be enforceable contracts.

While Hertz argues that "in certain circumstances such as here a policy *can*, indeed, constitute an enforceable contract" HOpp. 20-21 (emphasis in original), the question before the Court is not a hypothetical one—it requires the Court to examine the language of the Standards to determine whether its text creates enforceable contractual obligations.[9]  To find an employee handbook to be a binding contract, "it must be clear to both parties that the employer was making an offer to enter into a bargain on the terms contained in the handbook and that, by accepting or

---

[9] *See Doe v. Princeton Univ.*, 2018 WL 2396685, at *7-8 (D.N.J. May 24, 2018) (examining language of university's "rights, rules, responsibilities," such as "be honest," and determining the "very general and vague" language did not constitute a contract); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1165 (D. Colo. 2015) (determining that company's standards of ethics did not give rise to enforceable obligations based on policy's vague text).

continuing employment, the employee was agreeing to be contractually bound by those terms."

*L-3*, 125 F. Supp. 3d at 1165.  *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir.

2016) (affirming summary judgment based on "generalized" language that the Third Circuit has

held "inadequate to create a contract").  The most Hertz can do is to point to the Separation

Agreement, which contains language stating that Frissora will continue to abide by the

"principles and guidelines" set forth in the Standards.  HOpp. 21.  That language, however,

notably lacks any demonstration of Frissora's intent to transform the Standards into a contract

with Hertz where he could be sued for hundreds of millions of dollars for allegedly failing to

"lead by positive example."  In fact, the only time Hertz addresses the text of the Standards is in

discussing its "Message from the CEO," which appears at the beginning of the Standards.

However, Hertz has not based its Standards claim on anything in that "Message."  Frissora 56.1 ¶

52.  Instead, Hertz cites to the "Message" and Frissora's picture to emphasize his role as CEO

(HOpp. 21)—which says nothing about whether the Standards are an enforceable contract.

    Contrary to Hertz's opposition, there never has been a judicial finding rejecting Frissora's

argument that the Standards are too vague to be enforced as contracts.  *Id*. 22.  Judge Salas

merely declined to reach a conclusion at the motion to dismiss stage.  ECF No. 228, 11, 16.  But

Judge Salas did observe that "many of the provisions cited are somewhat vague, at least on their

face," and that Hertz "may indeed face an uphill battle to prove that the provisions cited (and

perhaps the business standards as a whole) created binding and definitive obligations on

Defendants and that Defendants breached those same obligations."  *Id.* 11.  Despite Judge

Salas's warning, Hertz has not come forward with any evidence to meet its burden.[10]

---

[10] Hertz also attempts to place the blame on Frissora for not ensuring that the Standards were not vague. *Id*. 21.  Not only does this argument not help Hertz, but it concedes that the Standards are vague and therefore unenforceable.

Hertz also disputes Frissora's statements regarding the Standards "to the extent the statement expresses a legal conclusion to the effect that all enforceable contracts need to be in writing" or "signed." Hertz Resp. 56.1 ¶¶ 45, 47-49.  This argument is absurd; the Standards are written documents.  Even putting this aside, Hertz has presented no evidence showing the parties' intent to enter into an oral contract regarding the Standards, as would be required under New Jersey law.  *See Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 617 (D.N.J. 2001).

**B.     Causation And Foreseeability Are Legal Issues Appropriately Resolved At Summary Judgment**

Again without citing a case, Hertz presumes that the damages sought in its Standards claim present a jury question.  But courts regularly resolve issues as to the causation and foreseeability of damages as a matter of law "where the outcome is clear." *Jakelsky v. Friehling*, 33 F. Supp. 2d 359, 366 (D.N.J. 1999) (granting summary judgment where "no reasonably jury could conclude that [the] claimed damages were a foreseeable result of [defendant's actions]"). *See* MFSJ 27-28 (collecting cases granting summary judgment due to lack of causation).

Likewise, "[p]roof of damages is essential to a breach of contract claim, and [the plaintiff] has the burden of proof as to that element." *Caro Assocs. II, LLC v. Best Buy Co.*, 2012 WL 762304, at *6 (D.N.J. Mar. 6, 2012) (granting summary judgment) (internal citations omitted).  Judge Salas confirmed Hertz's burden on damages when she found Hertz's claims sufficiently pled, but stressed that Hertz "may or may not ultimately be able to prove [its] entitlement to the exorbitant amount of damages [it] seeks." ECF No. 228, 15.

Hertz has not come forward with any evidence on causation with respect to the Standards claims.  Indeed, Hertz's expert <u>refused</u> to opine that Frissora's conduct caused the Restatement, which is a necessary predicate for finding that the Restatement-related damages flow from Frissora's alleged breach of the Standards.  Frissora 56.1 ¶ 69.  Nor could Hertz's Rule 30(b)(6)

designee articulate any link between Frissora's alleged breaches of the Standards and the damages Hertz claims.[11]  *Id.* ¶¶ 90-93.  Further, although Hertz asserts that Frissora "ignores volumes of evidence revealed during discovery," it cites nothing in support of this grandiose statement.[12]  HOpp. 25.  Hertz's argument that "Frissora's causation argument relies on a distortion of both Hertz's (SEC Form 10-K) public disclosure of the Restatement"[13] and "the role of Hertz's expert witness" is similarly flawed; even if these arguments were true (they are not), they would not change the fact that Hertz has not cited any evidence to support its causation theory.  MFSJ 27.  In short, "the outcome is clear"—Hertz's Standards claim fails.

## III.   HERTZ'S RECAST RECISSION CLAIM STILL FAILS

Hertz claims that Judge Salas made an "unfortunate misunderstanding" in ruling that Count IV "seeks the 'remedy of recission' of the Separation Agreement."  HOpp. 26-27.  There was no "misunderstanding," "unfortunate" or otherwise.  Hertz now tries to claim that it meant "rescissionary damages," as opposed to "rescission."  *Id*.  But Hertz cites no case law at all, let alone any that would support that "rescissionary damages" are even available under Florida law. They are not.  *See Bliss & Laughlin Indus., Inc. v. Malley*, 364 So. 2d 65, 66 (Fla. Dist. Ct. App. 1978) (noting that the remedies of rescission and damages are "inconsistent").  Rather, rescission is <u>only</u> an equitable remedy.  *See Longo v. Campus Advantage, Inc.*, 2022 WL 605304, at *3 (M.D. Fla. Mar. 1, 2022).  And it is the law of the case that Hertz seeks this remedy.  ECF No.

---

[11] Hertz does not now dispute this testimony but merely "objects" to the scope of the deposition questioning (Hertz Resp. 56.1 ¶¶ 90-93)—which, as previously shown, was entirely appropriate.

[12] Hertz mentions a report prepared by J&B, but it does not cite to anything.  HOpp. 25. Regardless, J&B never concluded that Frissora's conduct caused or contributed to the need for the Restatement.  *See* MF Opp. 56.1 ¶ 26(u).

[13] Hertz argues Frissora's reliance on the SEC Form 10-K is distorted because at that time it "not surprisingly employed cautious language …."  HOpp. 25.  To be sure, Hertz has never amended its SEC filings to reflect the self-evident transformation of its view of the underlying facts.

228, 19.  As Frissora previously demonstrated, this remedy is not appropriate.[14]  MFSJ 28-29.

## CONCLUSION

For the foregoing reasons, Frissora's motion for summary judgment should be granted in its entirety.

---

[14] Hertz's assertion that Frissora had "already quit" before he entered his Separation Agreement, HOpp. 27-28, is wrong.  While Frissora had resigned as CEO, that Agreement makes clear he was still a Hertz employee, and reverting to the status quo *ex ante* would require this Court to order that he has been a Hertz employee for the past eight years—an impossibility.  MFSJ 28-29.

12

Dated: October 17, 2022

Respectfully submitted,

By: */s/ David A. Kotler*
David A. Kotler
Andrew J. Levander (admitted pro hac vice)
Jeffrey A. Brown (admitted pro hac vice)
May K. Chiang (admitted pro hac vice)
Patrick N. Andriola (admitted pro hac vice)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
david.kotler@dechert.com
andrew.levander@dechert.com
jeffrey.brown@dechert.com
may.chiang@dechert.com
pat.andriola@dechert.com

Gavin J. Rooney
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
grooney@lowenstein.com

*Attorneys for Defendant Mark Frissora*

13