**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE HERTZ CORPORATION and HERTZ
GLOBAL HOLDINGS, INC.,

                                    Plaintiffs,

                    v.

MARK FRISSORA, *et al.*,

                                    Defendants.

Case No. 19cv08927 (EP) CLW

**OPINION**

**PADIN, District Judge.**

In this breach of contract action, Plaintiffs Hertz Corporation and Hertz Global Holdings (collectively, "Hertz") move for partial summary judgment (D.E. 290 ("Hertz Mot.")) and Defendant Mark Frissora cross-moves for summary judgment (D.E. 294 ("Frissora Mot.")). The Court will decide both motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **GRANT** Frissora's summary judgment motion on all counts,[1] and will **DENY** Hertz's summary judgment motion on Counts I and II.

## I.    BACKGROUND[2]

### A.  Factual Background

In 2014, Hertz, with advice from its outside auditors, determined a restatement ("Restatement") of Hertz's financials from fiscal years 2011, 2012, and 2013 was necessary. D.E.

---

[1] Because the Court grants Frissora's motion for summary judgment as to Counts I and II, the Court does not consider Frissora's argument in opposition to Hertz's motion that argues it should be denied based on its form. *See* Frissora Reply at 2-4.

[2] This section derives mainly from the parties' briefings, pleadings, and Judge Esther Salas' previous opinion.

228 ("Salas Op.") at 1.  The Restatement identified accounting errors, which "led to federal and state government investigations, a securities class action lawsuit against Hertz, and other incidental costs." *Id.*  An internal audit committee investigated the accounting errors. *Id.*  In 2014, Frissora, then Chief Executive Officer ("CEO"), left his position at Hertz, and the parties executed a separation agreement ("Separation Agreement") that provided severance, golden parachute payments, and benefits in connection with Frissora's resignation, which the agreement noted was "without cause."  Hertz Mot. at 1; Frissora Mot. at 7.  The Restatement was filed on June 16, 2015, and noted that former Chief Executive Officer (CEO) Frissora's "tone at the top . . . resulted in an environment which in some instances may have led to inappropriate accounting decisions." Frissora Mot. at 4.

Hertz brought this lawsuit, alleging that the gross negligence and misconduct of Hertz's senior executive officers, including Frissora, in part caused the need for the Restatement. *Id.* at 2. Four counts are against Frissora, each based on what Hertz alleges to be an enforceable contract.

    *1. The adoption and alleged breaches of Hertz's Clawback Policies (Counts I and II)*

Count I alleges a breach of contract claim, seeking enforcement of the 2010 Clawback Policy, through which Hertz would recover incentive-based compensation paid to Frissora in fiscal years 2011, 2012, and 2013.  D.E. 109 (Hertz's Second Amended Complaint, "SAC") at 39.  Count II similarly alleges a breach of contract claim, seeking enforcement of the 2014 Clawback Policy, through which Hertz would recover the golden parachute payments paid to Frissora. *Id.* at 41.

On November 12, 2009, Hertz's Board of Directors adopted "Proposed Joint Board Resolutions," which found "that it is in the best interests of [Hertz] and its stockholders to adopt a policy that requires certain executive officers to repay or forfeit compensation where the payment, granting or vesting of such compensation is based on certain restated financial statements[.]"  D.E.

295-15 ("2010 Clawback Policy") at 2.  The 2010 Clawback Policy became effective on January 1, 2010, and required that "Hertz Holdings' Standards of Business Conduct . . . be amended and restated to include the compensation recovery policy . . . ."  *Id.*  The 2010 Clawback Policy also "authorized and instructed" the Chief  Human Resource Officer to "take . . . actions that she deems necessary, appropriate and advisable to effectuate and carry out the purposes of the foregoing resolutions, including, but not limited to, securing the written agreement of each executive officer to such policy." *Id.*

Additionally, the 2010 Clawback Policy outlined the criteria triggering a "claw back," including a compensation committee's good-faith determination "that the executive officer's gross negligence, fraud or misconduct caused or contributed to the need for [a] restatement." *Id.* at 3. Additionally, it stated that, once in effect, "each award agreement or other document setting forth the terms and conditions of any [incentive-based compensation] granted to an executive officer shall include a provision incorporating the requirements of [the 2010 Clawback Policy] with respect to such award." *Id.* at 3-4.   In 2014, the clawback policy was amended ("2014 Clawback Policy").  Salas Op. at 3. This policy was "substantially similar to the 2010 policy but require[d] that the compensation committee determine in its sole discretion, exercised in good faith, that the executive officer's gross negligence or **willful** misconduct caused or contributed to the restatement." *Id.* (emphasis in original).

### 2.  The Breach of the Standards of Business Conduct (Count III)

In Count III, Hertz alleges that Frissora breached the 2011 and 2012 versions of Hertz's Standards of Business Conduct ("Standards"). *Id.* at 42.  Both versions contain similar guidelines and state they serve as a "reference" as to how Hertz conducts business, including ethical and

lawful conduct.  *See* D.Es. 295-19 ("2010 Standards"), 295-21 ("2012 Standards").  Hertz seeks

damages proximately resulting from the alleged breach.  SAC ¶¶ 158-59.

Based partly on the Restatement's conclusion that Frissora's "tone at the top" could have

"resulted in accounting errors," Hertz alleges that between 2011 and 2014, Frissora breached the

following generally applicable provisions:

- ***Follow*** our Code, Company policies and procedures, and the law at all times—even if someone asks us to do otherwise;
- ***Uphold*** the principles set forth in our Code and Company policies and procedures in all that we do;
- Understand that there is no excuse, including ignorance or "everyone else is doing it," ***for acting illegally or unethically***; and
- ***Speak up*** if we know or suspect that a violation of our Code has occurred.

*Id.* ¶¶ 149-50 (emphasis in original).  Further, Hertz alleges that during that timeframe, Frissora

breached the following provisions specifically applicable to managers:

- Lead by positive example;
- Promote an open door policy so employees feel comfortable asking questions and voicing concerns;
- Train other employees on this Code and relevant Company policies and procedures;
- Respond to the concerns expressed by employees, escalating issues when necessary; and
- Keep an eye out for misconduct, ***never excusing*** or promoting violations of this Code or the law.

*Id.* ¶ 152 (emphasis in original).

### 3.  *Breach of the Separation Agreement (Count IV)*

As an alternative to Count III, Hertz seeks rescission of the Separation Agreement executed

between Frissora and Hertz upon Frissora's departure in 2014.  *See* SAC at 47-49.  In addition to

severance, golden parachute payments, and benefits, the Separation Agreement provided that the

Clawback Policies "may only be triged if Frissora engaged in gross negligence, fraud[,] or willful

4

misconduct."  Frissora Mot. at 7 (cleaned up).  Hertz argues that it entered into this Separation Agreement in reliance on Frissora's representations that he had not engaged in such conduct, which Hertz claims were false; accordingly, Hertz "seeks to recover the monies paid to Frissora pursuant to th[is] agreement."  Salas Op. at 20 (citing SAC ¶¶ 167-70).

### B.  Procedural Background

Hertz filed its complaint on March 25, 2019, against Frissora and other Defendants not relevant to this Opinion.  D.E. 1.  All Defendants moved to dismiss (D.Es. 48-50), and Hertz filed the first amended complaint (D.E. 54 ("FAC")).  Then, Defendants moved to dismiss the FAC. D.Es. 57-59.  After briefing, Judge Salas held oral argument on March 10, 2020 ("2020 Oral Argument").  *See* D.E. 100 ("Transcript of 2020 Oral Argument," or "Tr. 2020 Oral Argument"). Judge Salas denied-in-part and granted-in-part Defendants' motions to dismiss.  D.E. 98.

As for Counts I and II, Breaches of the Clawback Policies, Judge Salas denied the motions to dismiss, finding Defendants' arguments premature.[3]  Salas Op. at 4 (citing D.E. 98).  As for Count III, Breach of the Standards of Business Conduct, Judge Salas declined to conclude that the Standards are not enforceable contracts, as argued by Defendants, finding the question premature; however, Judge Salas granted the motions to dismiss Count III because Hertz failed to put Defendants on notice of which provisions each Defendant allegedly beached, and what conduct amounted to breach.  *Id.*  Lastly, Judge Salas granted the motions to dismiss Count IV, Breach of the Separation Agreements, because Hertz improperly group pled and failed to state a claim.  All dismissals were without prejudice.

---

[3] Specifically, Defendants argued an issue of "contract interpretation that is not permissible at the motion to dismiss stage."  D.E. 98 at 4:24-5:2.

Hertz filed the SAC on May 12, 2020, which restated all Counts and pled Count IV as an alternative to Count III.  *See* SAC ¶¶ 124-70.  Defendants again moved to dismiss, arguing that Hertz did not cure any deficiencies.  D.Es. 120, 122.  After briefing, Judge Salas held oral argument on April 13, 2021 ("2021 Oral Argument").  *See* D.E. 2020 ("Transcript of 2021 Oral Argument," or "Tr. 2021 Oral Argument").  At the 2021 Oral Argument, Judge Salas and the parties engaged in extensive discussions regarding Hertz's SAC, as both in the SAC and during oral argument, Hertz "backtracked" on multiple representations as to the relief Hertz sought and on what grounds. *See* Salas Op. at 7-9, 17-20.  After discussing these issues at length, Judge Salas confirmed with Hertz's counsel what Hertz's positions were.  *Id.*

Ultimately, Judge Salas rejected Defendants' arguments, finding some premature and finding the SAC was sufficiently pled.  Judge Salas only dismissed Count III to the extent it relied on an earlier version of the Standards because Hertz failed to put Defendants on notice of what provisions they breached, and how.  *See id.* at 10, 11, 22.  However, Judge Salas held that the "moving target" of Hertz's shifting positions "stops here."  *Id.* at 19.  Based on the SAC and representations made at the 2021 Oral Argument, Judge Salas outlined the roadmap for Hertz's claims moving forward.  Specifically, Judge Salas held:

> As set forth above, at oral argument, Plaintiffs clarified that they intend to argue that the [C]lawback [P]olicies are stand-alone contracts and that Count II is grounded in the [2014 C]lawback [P]olicy, not the [S]eparation [A]greement. Plaintiffs further explained that, if the Court ultimately rules in Defendants' favor on Count II, and if Plaintiffs do not recover all of the damages asserted in Count III, Plaintiffs plan to seek the alternative remedy of rescission through Count IV.

*Id.*

On November 26, 2022, Hertz moved for partial summary judgment as to Counts I and II. *See* Hertz Mot.  Frissora opposed (D.E. 292 ("Frissora Opp'n")), and Hertz replied (D.E. 293

("Hertz Reply")).  The same day, Frissora moved for summary judgment as to all claims.  *See* Frissora Mot.  Hertz opposed (D.E. 296 ("Hertz Opp'n")), and Frissora replied (D.E. 298 ("Frissora Reply")).

## II.   LEGAL STANDARDS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over nonmaterial facts will not preclude a court from granting a summary judgment motion.  *See id.*

The moving party has the initial burden of showing the basis for its motion and demonstrating that there is an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must support its motion by citing to specific materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).

If a moving party adequately supports its motion, then the burden shifts to the nonmoving party to "go beyond the pleadings" and designate specific facts on the record that demonstrate a genuine dispute for trial exists.  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  Specifically, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to provide such evidence, or where the "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment."  *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50).  However, "[i]f reasonable minds

could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

## III.    ANALYSIS

### A.    The Law of the Case Precludes Hertz from Asserting the Incorporation Argument

*1.    Judge Salas' Opinion barred Hertz from further asserting the Incorporation Argument*

Hertz argues that the Clawback Policies were incorporated into "various other agreements" with Frissora and as such, are enforceable through this incorporation ("Incorporation Argument"). Hertz Mot. at 18. Specifically, Hertz argues that the following documents incorporate one or both Clawback Policies: (1) Frissora's Employment Agreement, which Hertz argues incorporates both Clawback Policies because it states that the violation of a "material company policy" constitutes a defined cause to terminate Frissora's employment; (2) the Separation Agreement, which Hertz argues incorporates the 2014 Clawback Policy by reference; and (3) Hertz's "bylaws," which Hertz argues incorporate both Clawback Policies because they "impose on [Frissora] and other senior executives the solemn duty of abiding by and enforcing company policies." Hertz Reply at 4.

Frissora claims that Hertz is barred from asserting the Incorporation Argument. *See* Frissora Opp'n at 5-6. Frissora argues that "Judge Salas's clear and unambiguous ruling [as to the

second motion to dismiss], as well as [Hertz's] own clear and unambiguous judicial representations [made at oral argument]," mandate that "[Hertz's] clawback claims can be pursued <u>only</u> under the theory that the Clawback Polices are standalone contracts." *Id.* at 6 (emphasis in original).  As such, this Court should apply the "law of the case doctrine" and not relitigate this same issue to "promote finality, consistency, and judicial economy." *Id.* at 5 (internal quotation marks omitted).

Hertz, however, claims this argument is still available to it.  Though Hertz's counsel "acknowledges his role in creating the confusion" as to Hertz's "shifting positions and theories of liability" (Hertz Mot. at 16), Hertz argues that Frissora (1) cannot point to witnesses testimony suggesting that the point is abandoned,[4] (2) Frissora "manipulates statements by lead counsel made at oral argument[,]" and (3) Judge Salas "specifically ruled that Hertz may proceed with the alternative argument that the Clawback Policies are enforceable because they are incorporated into other written contracts"[5] (Hertz Opp'n at 5-6).

The Court agrees with Frissora that Hertz can only argue that the Clawback Policies are stand-alone contracts.  Accordingly, if the Court finds that they are not enforceable contracts, then Hertz's breach of contract claims under Counts I and II will fail.

During the 2020 Oral Argument, Judge Salas asked for clarification on what appeared to be conflicting arguments.  Specifically, Count II sought to *enforce* the 2014 Clawback Policy, and the 2014 Clawback Policy is referenced in the Separation Agreement.  Salas Op. at 18; *see also* Frissora Mot. at 7.  Count IV, however, sought *recission* of the Separation Agreement for breach.  Salas Op. at 18.  Hertz explained there is no conflict because Count IV (seeking recission) is an alternative to Counts I and II (seeking enforcement).  *Id.* at 17-18.  Hertz also agreed with Judge

---

[4] Hertz does not explain how witness testimony would help to interpret Judge Salas' opinion.
[5] Hertz cites to no language in the Salas Opinion in support.

Salas that the Clawback Policies "by themselves, without reference to anything else[, are] not contracts . . . ." *Id.* at 18 (internal quotation marks omitted).  Accordingly, Judge Salas directed Hertz to "plead these claims [(Counts I and II)] in the alternative [( to Count IV)]." *Id.* at 17-18.

However, in the SAC and at the 2021 Oral Argument, Hertz "backtracked on nearly all the representations made" at the 2020 Oral Argument.  *Id.* at 18.

First, the SAC pled Count IV as an alternative to Count III, Breach of the Standards, and not as to Counts I and II.  *Id.*  At the 2021 Oral Argument, when Judge Salas asked for clarification, Hertz's counsel "explained that Counts III and IV are alternative claims because of the overlap in damages." *Id.* at 19.  Second, Hertz's counsel "also backtracked on prior representations that the [C]lawback [P]olicies are not stand-alone contracts[,]" and instead claimed they were enforceable on their own.  *Id.* (citation omitted).

Judge Salas explained that "the moving target stops here" and bound Hertz "by the allegations in the SAC with respect to [Count IV] and . . . by this Opinion with respect to *how this claim may proceed alongside the others*."  *Id.* at 20 (emphasis added).  Judge Salas outlined:

> As set forth above, at oral argument, Plaintiffs clarified that they intend to argue that the *clawback policies are stand-alone contracts* and that *Count II is grounded in the clawback policy, not the separation agreement*.  Plaintiffs further explained that, if the Court ultimately rules in Defendants' favor on Count II, and *if Plaintiffs do not recover all of the damages asserted in Count III*, Plaintiffs plan to seek the *alternative remedy of rescission through Count IV*.

*Id.* at 19 (emphasis added).

Judge Salas' opinion is clear: moving forward, Hertz can only argue that the Clawback Policies are standalone contracts.

### 2.   The Law of the Case Doctrine Warrants Applying Judge Salas' Opinion

"The law of the case doctrine is . . . triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue." *Lombardi v. Masso*, 207 N.J. 517, 539 (2011).   "It is a non-binding rule intended to prevent relitigation of a previously resolved issue" and is "discretionary [in] nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those factors that bear on the pursuit of justice and, particularly, the search for truth." *Id.* at 538-39 (internal quotation marks omitted). A court "should be loathe" to revisit prior decisions "of its own or of a coordinate court . . . in the absence of extraordinary circumstances[,] such as where the initial decision was clearly erroneous and would work a manifest injustice." *Pub. Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (internal quotation marks omitted).

The Court finds that Hertz is bound by the law of the case and as such, limited to arguing its breach of contract claims on the theory that the Clawback Policies are stand-alone contracts.

First, Hertz fails to demonstrate how this decision was clearly erroneous.  In ruling on the motion to dismiss the SAC, Judge Salas relied on the representations Hertz's counsel made in the SAC and at the 2020 and 2021 Oral Arguments.  At the latter, he explained that Count IV was not inconsistent with Count II because now, Hertz would be arguing that the 2014 Clawback Policy in Count II was its own contract, independent of the Separation Agreement.  *See* Salas Op. at 17, 19-20 ("[T]he SAC allows the Court to conclude that Count IV is an alternative theory of recovery that Plaintiffs intend to rely upon if they cannot recover the gold parachute payments through Count II or III.  Accordingly, the Court will not dismiss the SAC on these grounds.").

Nor does Hertz demonstrate how it suffers a manifest injustice if this Court upholds Judge Salas' opinion.  The case has proceeded for two years since Judge Salas' opinion; if anything, not

upholding the opinion would be unjust to Frissora, who has relied on the holding throughout litigation and whose prior motion was denied based on the representations Hertz now seeks to, for the third time, backtrack on.  *Contra Krys v. Aaron*, 106 F. Supp. 3d 472, 480 (D.N.J. 2015) (denying to apply the law of the case doctrine where the issue had not been "actually and fully considered").

Accordingly, to survive summary judgment, Hertz must demonstrate a genuine dispute of material fact as to whether the Clawback Policies are contracts.

### B. The Clawback Policies are Not Standalone Contracts and Consequently are Unenforceable (Counts I and II)[6]

Both parties move for summary judgment on Counts I and II.  *See generally* Frissora Mot. and Hertz Mot.  Count I alleges a breach of the 2010 Clawback Policy and seeks to recover incentive-based compensation paid to Frissora in fiscal years 2011, 2012, and 2013.  SAC ¶¶ 124-36.  Count II alleges a breach of the 2014 Clawback Policy and seeks to recover incentive-based compensation paid to Frissora upon his termination.  *Id.* ¶¶ 137-44.

Frissora argues that "an[] unsigned document enacted as part of a Board resolution" does not meet the criteria for a contract under New Jersey law; rather, "a board resolution may authorize the corporation to <u>enter into</u> contracts, but the resolution itself is merely an 'administrative mechanism,' and <u>not</u> a contract."  Frissora Mot. at 14 (emphasis in original) (quoting *Campbell v. Atl. Cty. Bd. of Freeholders*, 145 N.J. Super. 316, 322-23 (Law. Div. 1976)).

Hertz concedes that without more, "the unsigned resolution establishing the [2010] Clawback Policy is not a contract . . . ."  Hertz Reply at 4.  However, Hertz argues that "[a]ny action [or] pattern of conduct . . . can confirm . . . an unsigned writing such as a memo of understanding, or a proposal, etc.," and "Frissora's undisputed words and conduct conclusively

---

[6] The parties agree New Jersey law applies.

establish that the Clawback Polices are enforceable as written . . . ." Hertz Mot. at 16-17.[7]  Hertz points to: (1) Frissora's acknowledgment in his deposition that he is subject to the Clawback Policies; (2) Hertz's public filings, which were "made under [Frissora's watch] . . . and never suggested that the Clawback Policies were mere useless scraps of paper"; (3) "[a]t no time" during Frissora's tenue as Hertz's CEO and Board Chairman "did he[,] by words or deeds[,] indicate that he believed the [2010] Clawback Policy was unenforceable"; and (4) "because [Frissora] was still Hertz's CEO and Board Chairman for most of 2014, he was at least partially responsible and fully approving of the amended and expanded 2014 . . . Clawback Policy." *Id.* at 7-8.

A contract can either be (1) express, (2) implied-in-fact, or (3) implied-in-law. *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 144 N.J. 564, 574 (1996).  "[A] contract is express if the agreement is manifested by written or spoken words, and [a contract is] implied-in-fact if the agreement is manifested by other conduct." *Id.* (internal quotation marks omitted).  "[A] contract implied-in-law is a restitutionary claim[,]" and "the key element . . . is that one party has been unjustly enriched at the expense of another." *Id.* at 575 (internal quotation marks omitted). Both parties agree the Clawback Policies are not express contracts. *See* Hertz Reply at 4; Frissora Mot. at 4-6.  Hertz does not argue that either Clawback Policy is an implied-in-law contract. *See generally* Hertz Reply at 4.  And though Hertz does not specifically reference an "implied-in-fact" contract, because Hertz argues that Frissora's conduct establishes that the Clawback Policies are enforceable as written, the Court will treat this as an argument for an implied-in-fact contract.

"Whether the parties acted in a manner sufficient to create implied contractual terms is a question of fact generally precluding summary judgment." *Troy v. Rutgers*, 168 N.J. 354, 366 (2001).  But, "when no reasonable juror could reach other than one conclusion, the question of

---

[7] Hertz cites no cases in support.

whether a document constitutes an implied contract may be resolved in a motion for summary judgment." *Id.*  Under New Jersey law, "[t]he only difference between an implied-in-fact contract and an express contract is that the parties' agreement has been manifested by conduct instead of words." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 816-17 (D.N.J. 2000).  To survive summary judgment, the party alleging an implied-in-fact contract must demonstrate a genuine issue of material fact as to whether there was "mutual agreement and intent to promise . . . ." *Id.* at 817; *see also Read v. Profeta*, 397 F. Supp. 3d 597, 628 (D.N.J. 2019) (granting summary judgment where "[t]here was no meeting of minds on important and material terms, and no indication that [the party] manifested assent, by words or conduct, to be bound by [the] proposals").

However, even when drawing all justifiable inferences in Hertz's favor, Hertz fails to establish any conduct that could be construed as an offer from Hertz to Frissora or a meeting of the minds as to any agreement's material terms.  *See id.* at 627 n.23 (granting summary judgment and finding no contract when "th[e] lack of clarity [in the party's arguments] is emblematic of the problem with the contract claims").  To the contrary, the Clawback Policies acknowledge that they lack material terms unless incorporated: "each award agreement or other document *setting forth the terms and conditions* of any Covered Incentive Compensation granted to an executive officer *shall include a provision incorporating the requirements of this Compensation Recovery Policy* with respect to such award."  2010 Clawback Policy at 4 (emphasis added).  Frissora's deposition after the fact, Hertz's own public filings, and Frissora's general acceptance of the Clawback Policies do not remedy the lack of material terms and a meeting of the minds between Hertz and Frissora.  *See Big M, Inc. v. Dryden Advisory Grp.*, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009) (emphasis added) (quoting *Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000)) ("To have a meeting of the minds, both parties must manifest that they understand what each is

agreeing to do or not to do, and the 'contracting party is bound by the apparent intention he or she *outwardly manifests to the other party*.'")

As a matter of law, no reasonable juror could find that this constitutes a contract; rather, the Clawback Policies are mechanisms by which Hertz would enter *future* contracts incorporating these policies. *See, e.g.*, *Valenti v. Abate*, 2009 WL 5218063, at *6 (D.N.J. Dec. 31, 2009) (quoting *Campbell*, 145 N.J. Super. at 322-23) (when "no evidence was presented to indicate that either [party] . . . attributed any contractual effect'" to a resolution and the resolution "lack[ed] nearly all essential terms" as to performance, the resolution was not a contract; rather, it was "an 'administrative mechanism'" through which the board could effectuate action); *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) (formation of a contract requires that "the parties agree on essential terms").

Additionally, Hertz argues that "[t]he law often accommodates the realities of how people[] [and] companies[] . . . govern themselves and their relationships in the real world"; as such, the courts can enforce corporate policies in instances where the policies serve the purpose of "'maintaining a degree of centralized control across large organization.'" *Id.* at 17 (quoting *Stengart v. Loving Care Agency*, 408 N.J. Super. 54, 67-68, 973 A.2d 390, 398 (N.J. App. Div. 2009)). However, *Stengart* decided whether an employee handbook could be *internally* enforced, not whether an unsigned, ambiguous resolution could be enforced as a stand-alone contract. *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 655 (N.J. 2010).

Accordingly, because Hertz fails to establish a genuine issue of material fact as to whether the Clawback Policies were enforceable contracts, the Court will **DENY** Hertz's motion and **GRANT** Frissora's motion for summary judgment on Counts I and II and **DISMISS** these counts.[8]

### C.  The Standards of Business Conduct are Not Enforceable Contracts[9]

Frissora moves for summary judgment on Count III, Breach of the Standards.  Hertz alleges that Frissora breached the 2011 and 2012 Standards, which were in effect between 2011-2014.  In its SAC and at the 2021 Oral Argument, Hertz claimed that the Standards themselves constitute enforceable contracts.  SAC ⁋ 146 ("The Standards promulgated, and in effect, between 2009 and 2014 constitute enforceable contracts agreed to by each of Defendants."); 2021 Oral Argument Tr. 101:6-12 (Judge Salas stated: "[Hertz's counsel] is saying that he has maintained all along that there are these individual contracts that are enforceable between the parties: 2010 [C]lawback [Policy], 2014 [C]lawback [Policy], the . . . [S]eparation [A]greements, and now the . . . [Standards].")

Frissora argues that "[u]nder either New Jersey or Delaware law, general company policies and procedures do not constitute enforceable contracts."  Frissora Mot. at 21 (citing cases).  Frissora argues the Standards' provisions Hertz claims he violated are vague, such as to (1) not "bend the rules," (2) "speak up if [you] know or suspect" a Standards violation, (3) "lead by positive example," (4) not act "illegally or unethically," (5) "maintain accurate records" to "ensure utmost honesty," (6) "lead by positive example," (7) "promote an open door policy," (8) make others "feel[] comfortable in making a report or asking questions," and (9) "treat each other with

---

[8] Because the Court grants summary judgment on Counts I and II, the parties' damages arguments are moot.

[9] The parties disagree on whether New Jersey of Delaware law applies; however, the Court previously determined that there is no conflict of law, and thus will continue to apply both.  *See* Salas Op. at 10 n.4.

respect." Frissora Mot. at 23-24 (cleaned up); *see also* FAC ¶¶ 150-153.  Additionally, Frissora argues that the Standards' language demonstrates there was no mutual intent to contract because (1) there is no reference to a contract, offer, acceptance, or consideration; (2) the signature portion states that it represents the employee "received my copy" of the Standards; and (3) the Standards state they are "intended to provide a general overview of the Company's policies," repeatedly referring to itself as a "procedure," "reference source," or "guide." *Id.* at 23 (cleaned up).

Hertz claims that the Standards are enforceable because "in certain circumstances such as here, a policy *can*, indeed, constitute an enforceable contract." Hertz Opp'n at 21.  Hertz points to two circumstances in support: (1) Frissora's Employment Agreement "requires him to honor material company policies, including specifically the [Standards]," and (2) that as then-CEO, it was Frissora's duty to "ensur[e] the Standards are not vague and otherwise unenforceable." *Id.*

Under New Jersey law, "[a] contract is unenforceable for vagueness when its terms are too indefinite to allow a court to ascertain with reasonable certainty what each party has promised to do." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1025 (D.N.J. 1995).  "The terms of a contract are certain if the court can determine the existence of a breach and provide an adequate remedy[;] . . . [i]f performance cannot be ascertained, then the parties have not entered into a legally enforceable contract." *Big M*, 2009 WL 1905106, at *14 (citations omitted).[10]  Generally, the law "does not favor voiding a contract for vagueness." *Lo Bosco*, 891 F. Supp. at 1026.  Relatedly, both parties must "outwardly manifest[] to the other party" that "they understand" the agreement. *Big M*, 2009 WL 1905106, at *13.

---

[10] Delaware law similarly holds that "[a] contract is sufficiently definite and certain to be enforcebale if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018).

New Jersey law recognizes that an employee manual, such as a handbook, can create an implied contract between the employer and employee. *Tourtellotte v. Eli Lilly and Co.*, 636 Fed. App'x 831, 840 (3d Cir. 2016). However, when a widely disseminated employee handbook contains only vague and aspirational language, it is not an enforceable contract. *See Cioni v. Globe Specialty Meals, Inc.*, 2014 WL 2965707, at *7 (D.N.J. July 1, 2014) ("[T]he language 'the highest standards of integrity and honesty' is too vague to give rise to any contractual obligation . . . ."); *Monaco v. Am. General Assur. Co.*, 359 F.3d 296, 308 (3d Cir. 2004) (broad statements that a company "strives to comply with its legal obligations, [and] nothing more," cannot create legally binding obligations "beyond those the law already imposed"); *Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 334 (D. Del. 2007) (citing *Heideck v. Kent Gen. Hosp.*, 446 A.2d 1095, 1097 (Del. 1982)) ("As a general rule, an employee manual that does not set forth the terms, conditions, or duration of employment does not constitute an employment contract."); *Elite Cleaning Co., Inc. v. Capel*, 2006 WL 1565161, at *4 (Ct. Chanc. Del. June 2, 2006) ("[A]n employee handbook[] [that] does not set forth terms, conditions, or duration of employment, does not constitute a contract between an employer and employee.").

Further, when the "language in the [employee] manual . . . is such that no one could reasonably have thought it was intended to create legally binding obligations[,]" the manual is not a contract. *Monaco*, 359 F.3d at 308; *Lopez v. Lopez*, 997 F. Supp. 2d 256, 278 (D.N.J. 2014) ("[i]n order to state a claim based on an employment manual or widely distributed policy, the [p]laintiff must point to a provision that contains an express or implied promise concerning the terms and conditions of employment"); *id.* ("[A]n implied contract based on an employment manual may be negated by the inclusion of a . . . disclaimer [that is] expressed in language such that no one could reasonably have thought [the manual] was intended to create legally binding

18

obligations"); *see also Kennelly v. Pa. Turnpike Comm'n*, 208 F. Supp. 2d 504, 519 (E.D. Pa. 2002) (finding an employee handbook was not a contract partly because the handbook stated it "is designed to be used as an informational guide to certain employment policies of the [company]").

Here, Hertz seeks to enforce provisions containing only broad, aspirational language, but offers no yardstick by which to ascertain performance from the Standards, such as to not "bend" rules, "lead by positive example," "promote an open door policy," among others. *See Le Bosco*, 819 F. Supp. at 1025 ("[a] contract is unenforceable for vagueness when its terms are too indefinite to allow a court to ascertain with reasonable certainty what each party has promised to do"); *Cioni*, 2014 WL 2965707, at *7 (finding no contract and granting summary judgment where "the language 'the highest standards of integrity and honesty' is too vague to give rise to any contractual obligation"). Nor does language to not act "illegally or unethically," without more, create a legally binding obligation; Hertz fails to identify additional facts that would create a contract. *Monaco*, 359 F.3d at 308 (finding no contract and affirming summary judgment when the employee handbook contained only broad, aspirational language). And even if it was Frissora's duty to "ensur[e] the Standards" were enforceable, Hertz does not demonstrate how Frissora's failure to draft an enforceable agreement then creates an enforceable agreement. Lastly, even when considering that Frissora's Employment Agreement required him to "honor" the Standards, the Standards themselves are still too vague to be enforceable as legally binding duties.

Hertz also fails to point to any language that evidences an intent to create legally binding obligations. In fact, the Standards explicitly state that "[Hertz's] code is only as effective as those who follow it." 2010 Standards at 3. Additionally, the Standards consistently state they are a "guide," not a "contract." *Id.* at 2. Lastly, the employee's signature on the Standards is one explicitly of receipt without any indication of legally binding obligations. *See id.* at 21.

Because Hertz has not met its burden to demonstrate a genuine dispute for trial exists as to the contract's enforceability, both on vagueness and an intent to contract, the Court will **GRANT** Frissora's motion for summary judgment and **DISMISS** Count III.  *See Celotex Corp.*, 477 U.S. at 324.[11]

### D. Hertz Fails to Establish a Genuine Dispute of Material Fact as to Whether Rescission of the Separation Agreement is Possible[12]

Lastly, Frissora moves for summary judgment on Count IV, titled "Breach of the Separation Agreement."

#### 1. Count IV is seeking the equitable remedy of rescission, not damages

First, the Court must address what relief Hertz seeks.  Frissora argues that rather than pleading a breach seeking damages, Hertz *actually* seeks rescission of the Separation Agreement. Frissora Mot. at 2, 12-13 (citing Salas Op. at 17-19).  Frissora points to transcripts of the Oral Arguments and Judge Salas' Opinion, the latter which notes that through rescission, Hertz "seek[s] to . . . recover the monies paid to [Frissora] in connection with [the Separation] [A]greement[]." Salas Op. at 17; *see also* Frissora Mot. at 12-13.

Hertz objects and claims it is arguing for "recessionary damages" (monetary relief), not rescission (equitable relief).  Hertz Opp'n at 27 (citing to 2020 Oral Argument Tr. 73:21, 83:3). Further, Hertz claims Frissora mischaracterizes both Hertz's counsel's representations at oral argument and Judge Salas' Opinion.  *Id.*  Lastly, Hertz argues that "the SAC nowhere seeks re[s]cission of the Separation Agreement" and that "[w]here equitable relief is not possible, damages are available."  *Id.*

---

[11] Because the Court grants summary judgment in full, it will not address Frissora's alternative argument for summary judgment as to damages.

[12] Both parties agree that, per the terms of the Separation Agreement, Florida law applies.

The Court agrees with Frissora.

"Florida law requires plaintiffs to make an election of remedies, choosing between rescission, in which a voidable contract is repudiated, and damages, in which the contract is affirmed." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1279 (11th Cir. 2004). Therefore, a plaintiff cannot pursue both damages *and* rescission; "[t]he two remedies are mutually exclusive" because "rescission is predicated on *disavowal* of the contract" whereas "damages is based upon its *affirmance*." *Id.* (cleaned up) (emphasis added). Rescission is an equitable remedy, and its prime object "is to undo the original transaction and restore the former status" of the parties. *Willis v. Fowler*, 102 Fla. 35, 38 (1931).

Thus, under Florida law, Hertz's "recessionary damages" claim is an oxymoron. *See id.*

And, in looking at the SAC, transcripts from the Oral Arguments, and Judge Salas' opinion, it is clear Hertz is seeking the equitable remedy of rescission. First, in the 2020 Oral Argument, the following exchange occurred:

> THE COURT: And the remedy you seek is what?
> MR. BEIGEL: Well, the remedy would be *rescission* which would *invalidate the payment of the severance payments and related benefits*.
> THE COURT: Okay. So the remedy is rescission?
> MR. BEIGEL: Yes. Recessionary damages, I think is a more accurate way to say it.

2020 Oral Argument Tr. at 73:16-22 (emphasis added). Then again, during the 2021 Oral Argument:

> MR. BIEGEL: The separation agreement [argument] *seeks rescission and the disgorgement* of the payments made pursuant to the separation agreement.

2021 Oral Argument Tr. at 93:7-9

Additionally, much of the 2021 Oral Argument focused on Hertz's counsel explaining why Counts I and II, which sought enforcement of the Clawback Policies, were not inconsistent with Count IV. *See id*; *id.* at 98:12-21.

Further, as previously discussed, Judge Salas outlined the following as to how Hertz's arguments would proceed, which stated that Hertz "plan[s] to seek the *alternative remedy of rescission* through Count IV." Judge Salas Op. at 19 (emphasis added). Hertz offers no argument as to why the Court should not consider this the law of the case, nor does the Court find it "clearly erroneous" that Count IV seeks rescission. *See Pub. Interest Research Group*, 123 F.3d at 116. As noted, simply because Hertz's counsel mentioned "damages" in connection with "recessionary" a handful of times does not turn a rescission claim into a damages claim, because the two remedies are "mutually exclusive." *BellSouth Telecommunications*, 372 F.3d at 1279. This is especially true given the overwhelming reference and discussion of Count IV as a claim purely for "rescission," with no mention of "damages."

Finally, Count IV in the SAC is consistent with the representations made at Oral Arguments, which Judge Salas relied on in issuing her opinion. Specifically, the SAC seeks "the monies paid" to Frissora pursuant to the Separation Agreement, which Hertz argues "would not have been paid but for Hertz's reliance on the misrepresentations [Frissora] made in [his] . . . Separation Agreement[]." SAC ⁋ 170.

Accordingly, the Court will analyze whether there is a genuine dispute of material fact for Count IV to rescission.

### 2. *Hertz fails to demonstrate it can seek rescission*

For Count IV to survive summary judgment, there must be a genuine dispute of material fact as to whether the remedy it seeks, rescission, is available.

22

Frissora argues rescission is unavailable.  First, Frissora argues that Hertz is barred from seeking rescission as a matter of law if it does not "place [Frissora] in status quo."  Frissora Mot. at 28 (cleaned up).  Frissora claims it is "impossible" to return Frissora to the status quo because "[a]n undoing of the Separation Agreement . . . would require an order . . . that Frissora not only is a current employee of Hertz, but that he never was terminated and has been an unpaid Hertz employee since September 2014."  *Id.* at 29 (emphasis in original) (citing the Separation Agreement).

Under Florida law, the party seeking to rescind must "plac[e] the other party in status quo" as a prerequisite to rescission under Florida law.  *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 313 (Fla. 2000).  If "it is not possible for the opposing party to be put back into his pre-agreement status[,]" then rescission is impossible as a matter of law.  *Id.*

Hertz argues that "[e]ven if the Court views this case through the lens of rescission . . . the image the Court would see is that even equitable recission would not require giving [Frissora] back his job after having already resigned from all the positions he held.  Instead, under his Employment Agreement[,] his voluntary resignation would have entitled him to receive nothing . . . ."  Hertz Opp'n at 27.  Further, Hertz points to the Separation Agreement, which it claims "acknowledges in its first paragraph that Frissora had already quit . . . so there can be no employment position to 'rescind' anyway, and Hertz was not required to give him anything under his Employment Agreement or otherwise."  *Id.* at 28 (citing the Separation Agreement).  In response, Frissora notes that the Separation Agreement specifically states that Frissora was still a Hertz employee, and thus rescission would require returning Frissora's employment status.  Frissora Reply at 12 n. 14; *see* D.E. 295-24 (containing the Separation Agreement) at 1 ("Frissora and [Hertz] mutually agree that Frissora's employment . . . shall cease effective September 15, 2014 . . . .").

Frissora also argues that Hertz waived its right to rescission because it did not "promptly notify" Frissora of its "election to rescind" and waited over four years after Frissora's termination to bring this claim, thus barring this remedy as a matter of law. *Id.*

A party seeking rescission waives its right to rescind if the party "discovered grounds for rescinding an agreement and 'either remains silent when he should speak or in any manner recognizes the contract as binding upon him[ or] ratifies or accepts the benefits thereof . . . ." *AVVA-BC, LLC v. Amiel*, 25 So.3d 7, 11 (Fla. Dist. Ct. App. 2009*); see also Behrman v. Allstate Life Ins. Co.*, 2005 WL 8154572, at *5 (S.D. Fla. Mar. 24, 2005) ("a party's right to rescind is subject to waiver if he retains the benefit of a contract after discovering the grounds for rescission"). Additionally, a party is "barred" from rescission as a matter of law if the party seeking rescission does not provide notice of its intention to seek rescission. *Behrman*, 2005 WL 8154572, at *5 (dismissing with prejudice a rescission claim where the plaintiff did not "notify the [d]efendants of his intention to seek rescission of the contract" or "surrender the contract to return the companies to the *status quo* that existed before the contracts were entered into").

Hertz points to no facts demonstrating either: (1) that the parties could return to the status quo upon rescission, such as what happens with Frissora's employment status; (2) that it did not waive its right to rescission by waiting over four years to seek rescission; or (3) that it provided Frissora notice of its intent to rescind. Hertz only points to the Separation Agreement, which contradicts its point.

Accordingly, because Hertz fails to establish a genuine dispute of material fact as to whether its rescission claim is barred, the Court will **GRANT** Frissora's motion for summary judgment as to Count IV and **DISMISS** Count IV. *See Jackson*, 372 F.3d at 1279 (granting summary judgment when the plaintiffs waived their rescission rights).

## IV.    CONCLUSION

For the reasons stated herein, the Court will **DENY** Hertz's partial motion for summary judgment as to Counts I and II, will **GRANT** Frissora's motion for summary judgment as to Counts I-IV, and will **DISMISS** the SAC.

An appropriate Order accompanies this Opinion.

Dated: June 26, 2023

Evelyn Padin, U.S.D.J.